[Civ. No. 22022. Second Dist., Div. One. Nov. 2. 1956.]

J. C. COLLINS, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; BETTYE LOIS COLLINS, Real Party in Interest.

Herbert W. Simmons, Jr., for Petitioner.

Harold W. Kennedy, County Counsel, and Thomas H. Carver, Deputy County Counsel, for Respondent.

George M. Stephenson for Real Party in Interest.

THE COURT.—This matter is before us on a writ of certiorari to review two orders of the respondent court, by each of which petitioner is adjudged to be in contempt of an order of that court, and on each of which he has been sentenced to five days in the county jail. We have reached the conclusion that neither order can be sustained and that each must be annulled.

Petitioner is the defendant in an action brought by one Bettye Lois Collins seeking a divorce from him or, in the alternative, an annulment of her marriage to him. Contemporaneously with the commencement of the action Bettye caused petitioner to be cited before the respondent court to show cause why he should not be ordered to pay to her reasonable sums for attorney's fees, court costs, alimony, and for the support of the minor child of the parties. Hearing was had upon the order to show cause on October 25, 1955, before a commissioner of the court, and on that day the commissioner in the presence of petitioner made a finding that petitioner had the ability to pay $80 per month for the support of the minor child of the parties. Under that same date he made written findings and recommendations to the court recommending that petitioner be ordered to pay through the court trustee the sum of $80 per month for the support of the minor child of the parties, payable at the rate of $20 per week on the first four Fridays of each month, the defendant to be credited upon such payments for payments made for the support of petitioner through the city attorney (order apparently had been made for the payment of $32 per month in a failure-to-provide proceeding before the city attorney); and that he be ordered to pay to counsel for Bettye the sum of $175, payable at the rate of $15 per month.

On October 31 the court approved these findings and recommendations and made its order accordingly. This order

was not made in the presence of petitioner, nor was it served upon him.

On April 4, 1956, the action was tried as a default in the absence of petitioner; and on April 5, 1956, a decree annulling the marriage of Bettye and petitioner, and ordering petitioner to pay Bettye the sum of $80 per month for the support of the minor child of the parties at the rate of $20 per week, payable on the first four Fridays of each month was filed; and on the 9th of April, 1956, this decree was entered. On July 2, 1956, petitioner filed in the respondent court an affidavit alleging that on April 4, 1956, the respondent court made an order that petitioner pay to the plaintiff for the support of the minor child the sum of $80 per month, payable at the rate of $20 per week on the first four Fridays of each month, and alleging that since the making of the said order the conditions and circumstances surrounding said parties had materially changed, and setting forth that petitioner had a net income of $260 per month and obligations of over $300 per month, and praying that the order of April 4 be modified so as to reduce the amount which the petitioner would be required to pay for the support of his child.

Upon this affidavit an order was issued and served upon Bettye requiring her to show cause why the decree, insofar as it provided for payment by petitioner for the support of his child, should not be modified. On July 31, 1956, an order to show cause was issued by the respondent court directed to petitioner requiring him to show cause why he should not be adjudged guilty of contempt of court for willfully disobeying "the Order heretofore made on the 4th day of April 1956" as more particularly described in the affidavit of the plaintiff, which was annexed.

The affidavit of the plaintiff, which was the basis for the order to show cause, alleged in substance that on the 4th of April, 1956, the court had made the order which we have hereinbefore set forth as having been contained in the decree of annulment, that the petitioner had only made certain payments, which are set forth in detail in the affidavit and which totaled the sum of $79, and was delinquent in the sum of $253. It alleged that the defendant had the ability to make the payments in which he was delinquent but had willfully failed and refused so to do. It alleged that petitioner was not present when the order was made, and that the order was not pronounced in his presence; but in answer to the question set forth in the affidavit, "What other knowl-

edge of the Order has the adverse party received?" stated, "Through his atty, and O.S.C. re modification filed by defendant herein shows actual notice." It further stated that petitioner had sufficient income to comply with the order and that that income was in the sum of $260 per month net.

On the same day an order to show cause issued requiring petitioner to show cause why he should not be adjudged guilty of contempt for willfully disobeying the "Order heretofore made on the 25th day of October 1955." The affidavit filed by Bettye which was the basis for this order to show cause alleged that on the 25th of October, 1956,[1] the court had ordered petitioner to pay to plaintiff for the support of the minor child of the parties $80 per month payable on the first four Fridays of each month; that payments totaling $440 had accrued under said order; that there had been paid on account thereof the sum of $155 only; and that petitioner was delinquent in the sum of $285. The affidavit alleged that the order of October 25 was audibly pronounced in the presence of petitioner; and in answer to the question, "What other knowledge of the Order has the adverse party received?" stated, "Through his attorney." It made the same allegations as to the ability of petitioner to support his minor child as were set forth in the affidavit heretofore mentioned.

All orders to show cause were made returnable on August 21, 1956, and on that day the court apparently received some evidence upon the issues tendered by the order requiring Bettye to show cause why the order as to child support of April 4, 1956, should not be modified. After this evidence was taken, the court proceeded to determine the issues of contempt presented by the order to show cause directed to petitioner. At the opening of this proceeding, the following occurred:

"THE COURT: Number 5, Collins, and you may proceed with the contempt.

"MR. STEPHENSON: We arrived at a stipulation which we feel will dispose of the matter of the contempt.

"We offer to stipulate that the amounts set forth as the arrearage in each fourth of the contempt affidavits be found by the Court to be the amount in arrears as of July 31, 1956 on each order.

"THE COURT: July 31st?

"MR. STEPHENSON: Yes, and in other words, there would

---

[1]This is the date given in the affidavit, but all parties apparently understood it to refer to October 25, 1955.

be then an arrearage of $285.00 on the order of October 25th, 1955, and an arrearage of $253.00 on the order of April 4th, 1956 for child support, and an arrearage of $135.00 as of that July 31st on the order for attorney's fees which was made on October 25, 1955.

"We further offer to stipulate that the Court need not find the defendant in contempt on these orders, but in lieu thereof the Court make an order now for the payment of these arrearages and whatever amount per month the Court feels is reasonable that the defendant should pay.

"MR. SIMMONS: We are willing to stipulate, your Honor. We would like to ask the Court to make note of the fact that the defendant has during this period of time in question paid either eight, seven or eight, and in a few instances $10.00 a week except for a few weeks.

"MR. STEPHENSON: I have the list here of payments that were made and they were fairly regular, your Honor.

"THE COURT: Do you wish to offer that list, Mr. Simmons?

"MR. STEPHENSON: I have no objection if you feel you'd like to offer it.

"MR. SIMMONS: It might be well to have it in the file.

"THE COURT: You are offering it, Mr. Simmons. It will be received."

The court then orally announced its decision modifying the decree of annulment insofar as it provided for the support of the minor child of the parties; and immediately, without taking any further evidence and without the affidavits of Bettye having been offered or received in evidence, without any opportunity on the part of petitioner to cross-examine the affiant or to refute the statements made in the affidavits or to offer evidence to excuse his delinquency, proceeded to pronounce judgments finding petitioner in contempt of both orders, despite the objections of petitioner's counsel that he had understood that the charge of the contempt had been withdrawn by stipulation and despite counsel's statement that he was taken by surprise and that he desired to reopen the matter in order to show that his client was not actually working during a certain period of time due to illness. At one stage in the proceedings when counsel attempted to point out to the court that there had not been any sufficient showing of the order of April 4 and that therefore the court should not proceed, the court peremptorily told him that he was interrupting and that if he didn't like the order that the court was making he could take an appeal. The court, as

heretofore stated, found petitioner in contempt of both orders and sentenced him to the county jail for five days, the sentences to run consecutively.

 Proceedings such as this to have a person adjudged guilty of an indirect contempt because of a violation of an order of the court, although ancillary to the action in which the order which it is alleged the defendant has violated was made, are nevertheless quasi-criminal in character. (*Ex parte Ah Men,* 77 Cal. 198, 200 [19 P. 380, 11 Am.St.Rep. 263] ; *Mitchell* v. *Superior Court,* 163 Cal. 423 [125 P. 1061] ; *Ex parte Gould,* 99 Cal. 360 [33 P. 1112, 37 Am.St.Rep. 57, 21 L.R.A. 751] ; *Phillips* v. *Superior Court,* 22 Cal.2d 256, 257 [137 P.2d 838].)

 In order that the court may have jurisdiction to try one charged with contempt, the affidavit which initiates the proceeding must state the facts constituting the offense and must affirmatively show that the person charged with the contempt had knowledge of the order he is charged with violating (*Phillips* v. *Superior Court supra,* at p. 258; *Warner* v. *Superior Court,* 126 Cal.App.2d 821 [273 P.2d 89]), and the hearing had in the proceeding must be such as to constitute procedural due process (*Warner* v. *Superior Court, supra*).

 While no exact definition of due process may be formulated, it is established that due process is absent if a party is denied the right to have his cause tried and determined in accordance with the procedures that are applied in other cases of like character. (*San Jose Ranch Co.* v. *San Jose etc. Co.,* 126 Cal. 322, 326 [58 P. 824] ; *Gray* v. *Hall,* 203 Cal. 306, 317 [265 P. 246].) It implies the right not to be deprived of one's property or liberty without evidence having been offered against him in accordance with the established rules, and an opportunity to cross-examine those whose evidence is given against him, and the opportunity to present evidence in his own behalf. (*McClatchy* v. *Superior Court,* 119 Cal. 413, 420 [51 P. 696, 39 L.R.A. 691] ; *Matter of Lambert,* 134 Cal. 626, 633 [66 P. 851, 86 Am.St.Rep. 296, 55 L.R.A. 856] ; *Langendorf etc. Bakeries* v. *Industrial Acc. Com.,* 87 Cal.App.2d 103, 104 [195 P.2d 887], and cases cited.)

In the case at bar no evidence was offered against petitioner. The affidavits upon which the orders to show cause were issued served as the complaint charging the con-- tempt. They might also serve as evidence at the hearing

but they did not constitute such evidence until offered and received by the court, and upon their being offered petitioner would have the right to object to any matter stated therein upon any proper legal ground as to its relevancy or competency. In the proceedings here he would also have the right, if the evidence was offered and received, to cross-examine the affiant (*Langendorf etc. Bakeries* v. *Industrial Acc. Com., supra*; 16A C.J.S. 834). ▇ Without the affidavits' having been offered and without the petitioner having had a right to challenge the relevancy or the competency of the matter set forth in the affidavits, he was deprived of a trial of the issues tendered by the affidavits according to the rules and principles which have been established in our system of jurisprudence for the enforcement and protection of private rights. ▇ It is true that the proceeding in contempt being ancillary to the annulment action, the court might take judicial notice of the orders it had made; but it could not take judicial notice of and assume as true the facts stated in the affidavits until the defendant had had the opportunity to challenge those facts as evidence, and when it did so it deprived petitioner of due process (*Moore* v. *California Minerals etc. Corp.*, 115 Cal.App.2d 834, 837 [252 P.2d 1005]). Procedural due process being lacking, the judgments of contempt must each be annulled.

As to the judgment finding petitioner in contempt of the order denominated as one of October 25, 1955, is concerned, the facts disclosed by the file of the respondent court in the annulment action negative the truth of the finding made in the judgment of contempt that the defendant had knowledge of that order; for while the affidavit which is the foundation for the order to show cause in that contempt proceeding states that the order was audibly pronounced in the presence of petitioner, the proceedings had in that matter and of which the court was charged with judicial notice show that the only proceeding had on October 25 was a hearing before the commissioner who had no power to make any order, and that the actual order of the court was not made until October 31, 1955, and then was made in chambers by the approval of the recommendations of the commissioner. We advert to this phase of the matter not because it could in any wise affect the decision which we have necessarily come to, as heretofore announced, but because it has apparently been common practice, to assume, contrary to the facts, that a party who is present at the hearing before the commissioner is

charged with knowledge of an order thereafter made by the court. That this is not true follows not only from the fact that the commissioner has no power to order a party to do anything, but also from the fact that the court is not bound to make an order in accordance with the commissioner's findings or his recommendations.

The judgments holding the petitioner in contempt are, and each of them is, annulled.