428 P.2d 497

Pauline E. JONES, Plaintiff-Respondent,

v.

William T. JONES, Defendant-Appellant.

No. 9634.

Supreme Court of Idaho.

June 6, 1967.

**580**

John Hjellum, II, Boise; for appellant.

Allan G. Shepard, Atty. Gen., and Eugene L. McCoy, Sp. Asst. Atty. Gen., Boise, for appellee.

SMITH, Justice.

Appellant was adjudged in contempt of court for violation of a child support order entered by the district court. From the order adjudging him in contempt appellant appeals.

The author of this opinion has serious reservations as to the propriety of an appeal from judgments and orders of contempt. I.C. § 7-614 expressly provides that "[t]he judgment and orders of the court or judge, made in cases of contempt, are final and conclusive." We have previously ruled that a contemnor should proceed by way of an extraordinary writ, and not by appeal. Mathison v. Felton, 90 Idaho 87, 408 P.2d 457 (1965); Poff v. Scales, 36 Idaho 762, 213 P. 1019 (1923); Levan v. Richards; 4 Idaho 667, 43 P. 574 (1896).

A majority of the court, however desire to resolve this appeal on the merits inasmuch as respondent does not challenge the appeal, see Nez Perce County v. Latah County, 3 Idaho 413, 31 P. 800 (1892), and since Idaho's Constitution, Art. 5, § 9, provides that "[t]he Supreme Court shall have jurisdiction to review, upon appeal, any decision of the district courts * * *." See also State ex rel. State Board of Medicine v. Smith, 80 Idaho 267, 328 P.2d 581 (1958); Idaho Const., Art. 5, § 13, I.C. § 1-1622. We therefore consider and resolve appellant's substantive contentions.

Respondent's action for divorce from appellant was tried in the third judicial district court in Ada County on June 19, 1964. Appellant personally appeared at the trial. Seven days later, on June 26, 1964, the court entered a decree of divorce in respondent's favor; awarded respondent the custody of the six minor children, issue of the marriage, and ordered appellant to pay each month to respondent, child support money in the amount of $33.33 for each child. The court further ordered that the child support money be paid to the clerk of the district court as trustee, he to receipt therefor and pay over the money so received to respondent. The record does not indicate whether such decree and order were served upon appellant or appellant's counsel.

On November 24, 1964, the clerk of the district court filed an affidavit in said court and cause, which alleged,

"That he is the Clerk of the above District Court; That as such official, he has custody of the above entitled file and records pertinent thereto: that he does hereby state that said file contains an order of the above entitled court ordering above named WILLIAM T. JONES to pay to the Clerk of said Court the sum of Two Hundred ($200.00) Dollars per month as and for the support of his minor children. That the records pertaining to the file of the above entitled cause disclose that the above named WILLIAM T. JONES has failed to comply with the terms and conditions of said order."

The affidavit, together with an order to show cause in re contempt, were personally served upon appellant.

At the hearing pursuant to the order to show cause, appellant moved to strike the aforesaid affidavit, contending that it did not contain the essential allegation that appellant was served with the order for child support, or that appellant had actual knowledge of such order at the time of the alleged violation. The court denied appellant's motion and, upon judicially noticing its own records, adjudged appellant in contempt of court for violation of the June 26th child support order. The court made no express finding as to appellant's actual or constructive notice of such support order.

■ The challenge to the sufficiency of the clerk's affidavit, as set out in appellant's motion to strike, is preserved on this appeal, since denial of that motion was an interlocutory order not in itself subject to an immediate appeal. Maxwell v. Twin

Falls Canal Co., 49 Idaho 806, 292 P. 232 (1930); Steinour v. Oakley State Bank, 32 Idaho 91, 177 P. 843 (1918).

 Under the Idaho Code, contempts are of two classes—direct contempts, which occur in the immediate presence of the court, and indirect contempts, which occur outside the presence of the court, Appellant's alleged conduct falls within the second class, as an indirect contempt. I.C. § 7–603 provides that in such cases,

"* * * When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt * * *."

The affidavit on which contempt proceedings are based constitutes the complaint, and its function is to apprise the alleged contemnor of the particular facts of which he is accused, so that he may meet such accusations at the hearing.

 In a contempt proceeding the court acquires no jurisdiction to proceed until a sufficient affidavit is presented. Harkness v. Hyde, 31 Idaho 784, 176 P. 885 (1918). Since contempt proceedings are quasi-criminal in nature, even though designed to impose punishment for violation of an order made in a civil action, no intendments or presumptions may be indulged to aid the sufficiency of the affidavit. Phillips v. Superior Court, 22 Cal. 2d 256, 137 P.2d 838 (1943), construing Calif. Code Civ.Pro. § 1211, identical to I.C. § 7–603.

 The initiating affidavit must allege that the contemnor or his attorney was served with the order which he is charged as having violated I.R.C.P. 5(b) and 77(d), or that he had actual knowledge of it. Collins v. Superior Court, 145 Cal.App.2d 588, 302 P.2d 805 (1956); Doyle v. Superior Court, 113 Cal.App.2d 880, 249 P.2d 299 (1952); Young v. Superior Court, 69 Cal. App. 281, 231 P. 347 (1924); Trullinger v. Howe, 58 Or. 73, 113 P. 4 (1911); State ex rel. Oregon State Bar v. Lenske, Or., 405 P. 2d 510 (1965).

 The clerk's affidavit failed to state a prima facie case against appellant, in that it did not contain any allegation to the effect that the child support order was served upon appellant or his attorney, or that he had actual knowledge thereof. Hence, the trial court erred in denying appellant's motion to strike the affidavit, or in failing to direct respondent to file an amended or additional affidavit.

 Respondent contends that the initiating affidavit need not allege service or notice of the order where the records of the court in the contempt proceedings indicate the contemnor's actual notice of such order. In particular, respondent directs the court's attention to the trial court's June 19, 1964, minute entry which recites that appellant personally appeared in the divorce action engendering the child support order. Where the affidavit fails to allege all essential material facts, however, such deficiencies cannot be cured by proof supplied at the hearing, Phillips v. Superior Court, supra; Frowley v. Superior Court, 158 Cal. 220, 110 P. 817 (1910), or by judicial notice of the court's own records. State v. Lenske, supra. Moreover, the mere allegation by affiant that the alleged contemnor personally appeared in the action giving rise to the order is insufficient to charge actual or constructive notice of that order. Freeman v. Superior Court, 44 Cal. 2d 533, 282 P.2d 857 (1955); Phillips v. Superior Court, supra.

Order is reversed and the cause remanded for further proceedings including leave to amend the affidavit. State v. Lenske, supra, No costs allowed.

TAYLOR, C. J., and McQUADE, McFADDEN and SPEAR, JJ., concur.

TAYLOR, Chief Justice (concurring specially):

The constitution gives appellant the right to have the decision adjudging him guilty of contempt reviewed by this court "upon

appeal." "The Supreme Court shall have jurisdiction to review, upon appeal, *any* decision of the district courts, or the judges thereof, * * *." (Emphasis added) art. 5, § 9. It should not be necessary to repeat that in the American political system the constitution is the fundamental organic law of the state, and that the act of any department or officer contrary to its provisions is null and void. Need we remind ourselves that any act of the legislature contrary to, or violative of, any provision of the constitution is null and void. We have repeatedly held that the legislature may not diminish the jurisdiction conferred by the constitution upon the district court. State v. Interest of Lindsey, 78 Idaho 241, 300 P.2d 491 (1956); Boise City v. Better Homes, 72 Idaho 441, 243 P.2d 303 (1952); Clemens v. Kinsley, 72 Idaho 251, 239 P.2d 266 (1951); Robinson v. Robinson, 70 Idaho 122, 212 P.2d 1031 (1949); Fox v. Flynn, 27 Idaho 580, 150 P. 44 (1915). Likewise, the legislature may not diminish, or circumscribe, the jurisdiction conferred upon this court by the constitution.

In State ex rel. State Board of Medicine v. Smith, 80 Idaho 267, 268, 269, 328 P.2d 581 (1958), we held:

"* * * Despite dicta to that effect in some of our earlier decisions, the right of appeal *to the supreme court* is not purely statutory. Art. 5, § 9, * * * constitution. * * * That section is the source of the jurisdiction of the supreme court. The jurisdiction thus conferred cannot be denied or diminished by any act of the legislature. Art. 5, § 13, Const."

It is not sufficient to say that the constitutional provision providing the right to review upon appeal is not self-executing. If the right cannot be exercised in the absence of legislation providing procedure therefor, then it follows as a matter of logic that the legislature by failure to provide the procedure can deny the right, and prevent the exercise by this court of the jurisdiction conferred by the constitution. That would mean that the legislature, at its pleasure, could strike out or modify a provision of the constitution. That power the legislature does not possess.

"The legislature shall have no power to deprive the judicial department of any power or jurisdiction which rightly pertains to it as a coordinate department of the government; * * *." Const., art. 5, § 13.

True, the legislature is directed by art. 5, § 13, to provide a proper system of appeals. But that directive is in mandatory terms. The duty so to provide is not left to the discretion or whim of the legislature. The framers used the word "shall" not "may." Again it follows as a matter of logic that should the legislature fail in the performance of its duty to provide a proper system for the "review, upon appeal, [of] any decision of the district courts," this court would be bound to exericse its constitutional jurisdiction by procedure of its own making, or by resort to an appropriate writ. It could not abdicate its constitutional authority.

However, that is not the situation which confronts us in this case. The legislature has provided a proper system of appeals by the provisions of I.C. Title 13. Section 13–201 of that title provides that an appeal may be taken from the district court to this court "[f]rom a final judgment in an action or special proceeding." The procedure is provided by other sections in Title 13. Proceedings in contempt is a "special proceedings" provided for by I.C., Title 7, ch. 6.

To say that the legislature has authority to determine what decisions of the district court shall be appealable, and that the right of appeal exists only as prescribed by the legislature, is to hold—contrary to our fundamental law—that the legislature has authority to deny to this court jurisdiction given to it in clear and unambiguous terms by the constitution. If I.C. § 7–614 is construed to deny the right of appeal from a final judgment of the district court in contempt proceedings, it is unconstitutional and void. In my opinion that section should be held to mean that judgments and orders in

contempt proceedings are final and conclusive upon the parties in the district court. That is, they are final within the meaning of I.C. § 13–201, and thus appealable, though made and entered before final judgment in the action or proceeding in which the contempt arises.

Here the order of contempt was made and entered after the final decree of divorce, violation of which was charged as contempt. The contempt order was therefore made appealable by both I.C. § 7–614 and § 13–201. Cf. State ex rel. State Board of Medicine v. Smith, 80 Idaho 267, 328 P.2d 581 (1958).

In support of the contention that I.C. § 7–614 precludes review on appeal of a judgment in contempt, the decisions in Mathison v. Felton, 90 Idaho 87, 408 P.2d 457 (1965); Poff v. Scales, 36 Idaho 762, 213 P. 1019 (1923); and Levan v. Richards, 4 Idaho 667, 43 P. 574 (1896); are cited. The statement of the proposition contended for in the Mathison case was dictum, since that was an original proceeding for writ of review, not an appeal such as we have here. The same is true of the statement in the Poff case. That was an original application for a writ of prohibition, not an appeal. Levan v. Richards was also an original proceeding on writ of review. In none of those cases was the constitutional provision (art. 5, § 9) or the statute (I.C. § 13–201) considered. In the Mathison and Levan cases no authority was cited to support the dictum, except the statute (I.C. § 7–614) purporting to make judgments in contempt final and conclusive. The issue in all three cases was whether that statute prevented a review in this court by means of a writ— not whether an appeal would lie.

In Poff v. Scales, supra, this court quoted from Huerstal v. Muir, 62 Cal. 479 (1880). In that case the California court held:

"* * * We have jurisdiction to hear appeals in all cases of contempt judgments —when the question presented by the record is simply as to the jurisdiction of the lower court—or in none; since in all such cases, when we pass upon the juris-

diction of the Court below, we pass upon the merits of the appeal." 62 Cal. at 482. The constitutional jurisdiction of the court was not mentioned in that case. However, the Huerstal case was later cited by the California court in Tyler v. Connolly, 65 Cal. 28, 2 P. 414 (1884). In the Tyler case the California constitutional provision defining the jurisdiction of the supreme court was quoted. That provision detailed the cases in which the court was given jurisdiction. Contempt was not among the cases listed. The appellant contended his case came within the class of cases "in which the demand, exclusive of interest, * * * amounts to three hundred dollars," as mentioned in the constitution. The court held against that contention.

Unlike the California constitution, our constitution as originally adopted gave this court "jurisdiction to review, upon appeal, any decisions of the district courts, or the judges thereof". Therefore, the California decisions relied upon by this court in the cases cited, were not then, and they are not now, authority for the proposition that an appeal does not lie from an order or judgment in contempt proceedings.

Furthermore, the decision in Levan v. Richards, supra, is equivocal on the issue here considered, as well as on the availability of a remedy by writ. After quoting what is now I.C. § 7–614, the court there said:

"* * * The statute, then, indicates very clearly that when the district court, in contempt proceedings keeps within its jurisdiction, and there is no abuse of the discretion vested in said court, there is no appeal. It is clear, also, that, where the court confines its judgment to matters within its jurisdiction, its judgment cannot be reviewed by this court." Levan v. Richards, 4 Idaho 667, at 671, 43 P. 574, 575 (1896).

Thus, the court in that case implied that a remedy by either appeal or writ was available if the lower court exceeded its jurisdiction. But if the trial court kept within its jurisdiction then the aggrieved party would be allowed no remedy at all.

The old maxim, "ubi jus ibi remedium"— where there is a right there is a remedy— is applicable here. The legislature recognized the principle in I.C. § 1-1622, as follows:

> "When jurisdiction is, by this code, or by any other statute, conferred on a court or judicial officer all the means necessary to carry it into effect are also given; and in the exercise of the jurisdiction if the course of proceedings be not specially pointed out by this code, or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

In Fox v. Flynn, 27 Idaho 580, 150 P. 44 (1915), the principle was applied to give effect to the constitutionally granted jurisdiction of the district court:

> " * * * when jurisdiction is conferred upon the district court by the Constitution in all cases, both at law and in equity, there is also conferred, as an incident of such grant, the power to make the same effective by any suitable process or mode of procedure which may be adopted * * *." 27 Idaho at 588, 150 P. at 47.

This court in that case did not consider that the constitutional provision was not self-executing.

The principle was applied to uphold the inherent power of the district court to punish for contempt, in McDougall v. Sheridan, 23 Idaho, 191, 128 P. 954 (1913), where the court also said:

> "The Legislature has not the authority to restrict the inherent power of the court to punish for contempts; for, if it has the power to restrict such right, where will the line be drawn? If it could abridge the right, it could so minimize it as to make it ineffective for any purpose." 23 Idaho at 223, 128 P. at 965.

In the early California case of Appeal of Houghton, 42 Cal. 35, 59 (1871), Chief Justice Wallace, referring to failure of the constitution to speak on the subject of procedure, said:

> " * * * It has left that subject wholly at large, and to be provided by the Legislature, through statutes enacted, *or, in default of them, by this Court, through rules adopted for that purpose.* The jurisdiction of this Court, as defined by the Constitution, it is true, is in no sense dependent upon legislative provisions for its appropriate exercise. It exists, and is capable of effective assertion, independently of legislative aid as to the procedure through which it is to be exerted." (Emphasis added).

The California court spoke again on this subject in People v. Jordan, 65 Cal. 644, 4 P. 683 (1884):

> " * * * The legislature has prescribed no procedure for an appeal to this court in criminal actions, except 'in criminal actions amounting to felonies.' Penal Code, 1235. But the supreme court has appellate jurisdiction 'in all criminal cases prosecuted by indictment or information,' etc. Const. art. 6, § 4. The same section of the constitution provides: 'The court shall also have power to issue writs of *mandamus, certiorari,* prohibition, and *habeas corpus,* and all other writs necessary or proper to the complete exercise of its appellate jurisdiction.' The power to issue the writs specified, or any other writ, in a case where it may be necessary or proper to resort to it to secure the complete exercise of the appellate jurisdiction of the court, would exist had the constitution been silent on the subject. It may be conceded, for our present purposes, that where machinery has been supplied for the employment of its jurisdiction by legislative enactment, such machinery must be adopted or accepted by the court. But when a certain jurisdiction has been conferred on this or any court it is the duty of the court to exercise it; a duty of which it is not relieved by the failure of the legislature to provide a mode for its exercise. In the absence of

any rules of practice enacted by the legislative authority, it is competent for the courts of this state to establish an entire code of procedure in civil cases, and an entire system of procedure in criminal cases, except that criminal actions of a certain class must be prosecuted by indictment or information. Const. art 1, § 8." 4 P. at 684.

"* * * The power of courts to establish a system of procedure by means of which parties may seek the exercise of their jurisdiction, at least when a system has not been established by legislative authority, is inherent. *A fortiori* must this be so in California, where the judicial is a separate department of the government under our written constitution.

"Applying these principles to the case in hand, the defendant here was prosecuted by indictment, and the legislature has failed to provide the machinery for taking an appeal from a judgment for or against him. We are confronted by the duty imposed by the constitution of reviewing the proceedings of the court below. We entertain no doubt that we have the power of declaring, and that it is our duty to declare, how this and like cases may be brought here for review. We may issue to the lower court a writ of *mandamus* or *certiorari*, or we may frame and issue any other appropriate writ. But our power is not limited in the exercise of our appellate jurisdiction to the employment of technical *writs*. We may by *rule* establish any appropriate practice for the bringing here a record or proceeding in the court below. [*] *Still further, we possess the power, as necessarily incident to our jurisdiction, of recognizing as proper any mode of procedure already adopted for bringing a cause before us.*" *(Emphasis supplied). 4 P. at 686.

People v. Jordan, supra, was quoted and followed by the Utah court in Baker v. Dept. of Registration, 78 Utah 424, 3 P.2d 1082, 1086 (1931), where that court said:

"* * * If either original or appellate jurisdiction is, by constitutional provisions, conferred upon a court, the failure of the Legislature to provide the manner in which such jurisdiction shall be exercised cannot defeat the jurisdiction so conferred."

See also, State v. Morgan, 23 Utah 212, 64 P. 356, 361 (1901).

In Finlen v. Heinze, 27 Mont. 107, 69 P. 829 (1902), under a constitutional provision which expressly subjected the appellate jurisdiction of the supreme court to limitation and regulation by the legislature, the court said:

"* * * We cannot assent to the proposition that the legislature can thus limit and control the power vested in this court by the constitution, or that it has attempted to do so by the enactment of any of these provisions. It is manifest from the language of this instrument that it was the intention of its framers that the power of review granted should extend to all cases. The words 'the appellate jurisdiction of the supreme court extends to all cases at law and in equity' are of universal application, and must be construed to mean that the parties litigant have the right of appeal to this court for final review of the action of the trial court, whatever it is, and that this court has the power to grant such relief as this review implies." 69 P. at 831.

The Montana court held in the absence of legislative procedure the court would supply such by rule. When the case was again before the court on motion for rehearing (27 Mont. 107, 70 P. 517) the court held that the constitutional provision, giving the legislature authority to limit and regulate its appellate jurisdiction, could not extend to a denial of the right of appeal.

The availability of review by writ is not an answer to the problem. The scope of review available under the various statutory writs is not so broad as that provided by appeal. Thus, the right of "review upon appeal" would be impinged by limiting an

appellant to such a writ, and the constitutional jurisdiction of this court would thus be invaded.

SPEAR, J., concurs in this concurring opinion.