748 P.2d 1382

**Eldon W. WHITTLE and Elsie Whittle, husband and wife, Plaintiffs–Respondents,**

v.

**Donald G. SEEHUSEN, Defendant–Appellant.**

No. 16394.

Court of Appeals of Idaho.

Oct. 19, 1987.

Order Allowing Costs Dec. 3, 1987.

**854**

Arthur D. Zierold, Boise, for defendant-appellant.

Lloyd J. Webb of Webb, Burton, Carlson & Pedersen, Twin Falls, for plaintiffs-respondents.

SWANSTROM, Judge.

Donald Seehusen appeals from a district court order finding him in contempt of court. In an earlier action, the court permanently enjoined Seehusen from asserting an interest in certain property adverse to that of the owners. Six years later, Seehusen was charged with, and found guilty of, contempt for violation of that order. He appeals the contempt ruling, alleging that (1) the order to show cause was issued on an insufficient affidavit, depriving the district court of jurisdiction; (2) his actions did not constitute assertion of an interest adverse to the legal owners'; and (3) the final contempt order did not conform to the court's verbal order, was not timely issued and is unfairly detrimental to Seehusen. In responding to Seehusen's appeal, the Whittles have raised additional issues, arguing that (1) the contempt citation is not appealable; (2) Seehusen's partial obedience of the contempt order renders this appeal moot; and (3) Seehusen lacks standing to appeal the contempt order due to failure to appeal an earlier, related order. Both parties request costs and attorney fees on appeal. Based on the following reasoning, we vacate the contempt order and remand the case.

These background facts begin in 1978. Elsie and Eldon Whittle claimed ownership of five mining claims known as the Rock Garden Quarry Numbers 1 through 5 (the "Rock Garden Claims" or simply "the Claims"). Donald Seehusen asserted an interest in the same property as lessee from another party. Seehusen's lease purported to cover the disputed property plus adjoining acreage. The Whittles filed a quiet title action against Seehusen to settle the conflict. The parties stipulated to a settlement, agreeing that title would be quieted in the Whittles and that Seehusen's lease would be amended to exclude the Rock Garden Claims but would remain otherwise valid. In a judgment filed April 28, 1978, the district court formalized the settlement and declared that Seehusen was "forever enjoined and debarred from asserting any claim whatsoever in or to said claims, premises and property and any part thereof, *adverse* to [the Whittles]." (Emphasis added.)

What happened next is disputed. In an affidavit filed at the contempt hearing, Seehusen alleges the following events occurred. Ten days after the court entered its 1978 judgment, the Whittles entered into a contract for the sale of the Rock Garden Claims to Lionel Rodriquez. One week prior to this transaction, Rodriquez purportedly leased the Claims to John Hurley, Jr. for ten years in return for Hurley's capital contributions. Seehusen contends that Rodriquez purchased the Claims on behalf of a limited partnership in which Seehusen, Rodriquez and Hurley were the limited partners. Seehusen also alleged that he has some interest in the Claims but that his interest is derived from transactions with Rodriquez and Hurley and, therefore, his interest is not "adverse" to the Whittles' interest. The Whittles produced evidence at the hearing tending to show that in 1979 Seehusen signed and filed for public record certain placer mining location notices which purported, on behalf of Seehusen and Rodriquez, to amend the descriptions and boundaries of the Rock Garden Claims.

In 1985 the Whittles initiated contempt proceedings, alleging that Seehusen's filings asserted a claim to the Rock Garden Claims in violation of the 1978 court order

enjoining such conduct. Based upon the Whittles' motion and an affidavit, the court ordered Seehusen to show cause why he should not be held in contempt of court. A hearing was held. The district court ultimately found Seehusen to be in contempt of the 1978 order. The court ordered Seehusen to execute a deed disclaiming any interest in the property and the court set a deadline of February 21, 1986, after which a fine of $150 per day would be imposed until the deed was executed. This order was not filed until March 3, 1986. Seehusen appealed, contending that the district court was without jurisdiction to issue an order for contempt because the affidavit supporting the Whittles' motion and order to show cause failed to set forth the requisite elements. He also contends that any claim he has to the property is not adverse to the Whittles and is therefore not in violation of the 1978 order; that the written contempt order was untimely, unfairly prejudicial and not in accordance with the court's original judgment; and that the court should award him costs and attorney fees on appeal. Because we find the jurisdictional issue dispositive, we need not reach the remaining contentions.

■ However, before we address Seehusen's arguments, we will dispose of a number of the Whittles' assertions. Initially, the Whittles contend that an order of contempt is not appealable. They rely upon a long history of pre–1985 Idaho Supreme Court cases supporting their argument. Historically, judgments of contempt were "appealable" only through a writ of review, and the scope of review under a writ was limited to a determination of whether the lower court had exceeded its jurisdiction. *See historical discussion in In re Contempt of Reeves*, 112 Idaho 574, 733 P.2d 795 (Ct.App.1987). Over the years, exceptions to the general rule developed to allow the Supreme Court to reach beyond the limited scope of review to correct other errors unrelated to the lower court's jurisdiction. *See, e.g., Mathison v. Felton*, 90 Idaho 87, 408 P.2d 457 (1965) (contempt

order reviewable for existence of substantial evidence to support order). Finally, the Supreme Court's position shifted to reflect acknowledgement of the Court's plenary power under the state constitution to hear appeals of contempt orders in its discretion. *See Marks v. Vehlow*, 105 Idaho 560, 671 P.2d 473 (1983); *Lester v. Lester*, 99 Idaho 250, 580 P.2d 853 (1978). By both legislative and Supreme Court action since 1977, the rule has become settled that an appeal may be taken from a judgment of contempt. *See In re Contempt of Reeves, supra;* I.C. § 13–201; I.C.R. 54(a)(8); I.R.C.P. 83(a)(2); I.A.R. 11(a)(4).

■ The Whittles next assert that the issues presented in this appeal are moot because of Seehusen's execution of a deed to the Whittles in compliance with the court's directive. Seehusen asserts that any compliance resulted from an imposed choice between severe penalties or obedience of the court's order. This involuntary obedience, he contends, preserved his questions for appeal. We agree.

After finding Seehusen to be in contempt, the district court ordered Seehusen to execute a deed to the Whittles quitclaiming any interest in the Rock Garden Claims. As mentioned above, the deed was ordered executed by February 21, 1986, under threat of a $150 per day fine imposed for late compliance. In addition, the Whittles were awarded reasonable costs and attorney fees in the case. Seehusen sought and was granted a stay of execution for the pendency of his appeal. Security was set at $10,000 as a condition of the stay. Because he was unable to post this amount, Seehusen moved to amend the stay, requesting

1) that only that part of the contempt order pertaining to the judgment of costs be stayed during the pendency of [his] appeal; 2) that [he] shall issue an appropriate deed to plaintiff disclaiming any interest which he may have in the property described in the contempt order (subject to the possible voidance of this deed by the court in the event its contempt

order is modified, reversed or otherwise vacated by subsequent action of the appellate court); and 3) that, instead of $10,000.00, [he] shall post security with the court of $2,209.78 plus 10%, or a total of $2,430.76.

Defendant Seehusen further requests of the court that any deed to plaintiff pursuant to the court's contempt order be executed by the court under this authority to enforce its judgment.

Seehusen's supporting brief explained his position:

> The motion to amend the stay of execution order is intended to effect compliance with the Court's Contempt Citation and Order ... while preventing the possibility of such compliance precluding the issues to be heard on appeal.

The district court refused to execute the deed and granted the proposed amendment in all other respects. Seehusen executed the deed, paid the security and brought this appeal.

The general rule is that satisfaction of a judgment terminates the right to appeal the judgment. *Burnham v. Bray*, 104 Idaho 550, 661 P.2d 335 (Ct.App.1983). However, the right to appeal is *not* lost where satisfaction is involuntary. *International Business Machines Corp. v. Lawhorn*, 106 Idaho 194, 677 P.2d 507 (Ct.App.1984). In other words, a judgment paid, in full or in part, under legal coercion remains ripe for judicial review. *Twenty–Seventh Street, Inc. v. Johnson*, 716 P.2d 210 (Mont.1986); *Matter of Marriage of Sellers*, 39 Or.App. 647, 593 P.2d 1191 (1979).

Here, Seehusen's actions make it clear that any compliance occurred involuntarily. First, he made a timely, effective request for a stay of execution. Then in an attempt to meet the security condition, he offered a compromise. The court's refusal to execute the deed forced Seehusen into the unenviable position of choosing between (1) preserving the entire judgment for appeal and paying the fine and (2) executing the deed to avoid the court's sanction and risk losing his right to appeal part

of the judgment. The apparent element of judicial compulsion convinces us of the involuntary nature of Seehusen's actions. We conclude that Seehusen has not lost his right to take this appeal.

■ Finally, the Whittles contest Seehusen's "standing," in this appeal, to challenge certain of the lower court's rulings. Seehusen appealed from the February 28 order. The Whittles suggest that the February 6 order, identical except for the award of costs and attorney fees, is the final order for purposes of appeal because it was dispositive of the contempt question. Generally, an appeal may be taken only from a final judgment, order or decree. I.A.R. 11. However, the order appealed from is deemed to include

> All final judgments, orders and decrees entered prior to the judgment, order or decree appealed from for which the time for appeal has not expired....

I.A.R. 17(e)(1)(B). Seehusen's appeal was timely as to both orders. Hence, the appeal includes both judgments within its scope.

■ Turning to Seehusen's issues, we address his first contention concerning the insufficiency of the affidavit offered in support of the order to show cause. He asserts that the affidavit fails to set forth the necessary elements constituting the charge of contempt. The Whittles reply that this issue was untimely raised and therefore is not properly before this court.

The rule is well-settled that a court will not entertain for review an issue presented for the first time on appeal. *Baldner v. Bennett's Inc.*, 103 Idaho 458, 649 P.2d 1214 (1982); *Silver Syndicate, Inc. v. Sunshine Mining Co.*, 101 Idaho 226, 611 P.2d 1011 (1979). However, the record makes clear that this issue is not making its debut before us. The procedural history of this case properly begins with submission of the affidavit and motion requesting initiation of contempt proceedings. The district court held the show cause hearing. After the evidence was taken, counsel and

the court agreed that, in lieu of oral agreement, briefs would be submitted. Seehusen's brief included an argument fully outlining and supporting his position regarding the affidavit's insufficiency. The fact that the district court failed to address this argument in its ruling does not negate Seehusen's presentation of the issue to the court. We will therefore address the merits of the issue here.

The affidavit accusing Seehusen of contempt, in pertinent part, reads:

## II.

Consistent with the terms of the decree of April 28, 1978, ... Donald G. Seehusen [is] "forever enjoined and debarred from asserting any claim whatsoever in or to" the claims and real property specified in the decree of April 28, 1978.

## III.

Contrary to the terms of the decree of April 28, 1978, and in contempt of this Court, Donald G. Seehusen in his own behalf and on behalf of [the limited partnership] ... has made claim against the real property which is the subject of the decree of April 28, 1978, by filing placer and other mining claims upon the subject real property and by attempting to assert ownership therein.

## IV.

The acts of Donald G. Seehusen and his acts on behalf of [the limited partnership] are in contempt of this Court and its decree of April 28, 1978.

As noted, Seehusen contends that the affidavit was insufficient to establish the district court's jurisdiction. As explained below, we agree.

■ Seehusen's alleged conduct occurred outside the presence of the court and thus constituted indirect contempt. The court presiding over indirect contempt proceedings acquires no jurisdiction to proceed until a sufficient affidavit is presented. *Bandelin v. Quinlan*, 94 Idaho 858, 499 P.2d 557 (1972); *Jones v. Jones*, 91 Idaho 578, 428 P.2d 497 (1967). To be sufficient, an affidavit must state a prima facie case against the contemnor. A prima facie case is made by alleging that the contemnor or his attorney was served with the order which he is charged as having violated, or that the contemnor had actual knowledge of the order; and reciting with particularity the substantive facts which constitute a contempt on the part of the contemnor. *See First Security Bank of Idaho, N.A. v. Hansen*, 107 Idaho 472, 690 P.2d 927 (1984); *Bandelin v. Quinlan, supra; Jones v. Jones, supra; In re Contempt of Reeves, supra; Ziegler v. Ziegler*, 107 Idaho 527, 691 P.2d 773 (Ct.App.1985). Where the affidavit fails to allege all essential, material facts, such deficiencies cannot be cured by proof supplied at the hearing. *First Security Bank of Idaho, N.A. v. Hansen, supra.*

■ The affidavit here fails to allege a prima facie case. The most obvious fatal defect is the failure to allege that Seehusen or his attorney was served with the order which he is charged as having violated, or that Seehusen had actual knowledge of the order. Because of this defect, the district court was without jurisdiction to make its finding and order of contempt. Seehusen also asserts that the affidavit failed to recite with particularity the substantive facts constituting contempt. Because we have already determined that the affidavit was insufficient, we do not reach this issue.

The order of the district court holding Seehusen in contempt of court is vacated. The case is remanded for further proceedings, including leave to amend the affidavit to supply essential specific factual allegations. *Jones v. Jones, supra.* The deed involuntarily executed pursuant to the contempt order should be declared void by the district court. Costs to appellant Seehusen. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.

## ORDER ALLOWING COSTS

WALTERS, Chief Judge.

 Our opinion awarded costs to the appellant. He submitted a request for costs amounting to $745.75, including $100.00 for "supersedeas bond costs." Respondents objected only to these bond costs, arguing that a letter of credit issued by a bank authorized to do business in Idaho was allowed to be posted with the Clerk of the District Court in lieu of a supersedeas bond.

The appeal here was from a contempt order awarding respondents their costs and attorney fees. Idaho Appellate Rule 13(13) allows a stay from such an order "upon the posting of such security and upon such conditions as the district court shall determine." Subpart (14) of the rule allows posting of a "cash deposit or supersedeas bond" to obtain a stay of a money judgment.

We hold that posting the letter of irrevocable credit was substantially equivalent to posting a supersedeas bond. No objection to the form of the security was made at the time of its posting. The $100.00 cost of the letter of credit is reasonable and probably less than the premium of a surety bond. Accordingly, we hold that this cost is allowable under I.A.R. 40(b)(5).

THEREFORE, IT IS HEREBY ORDERED that costs be allowed to appellant in the amount of $745.45.