991 P.2d 865

**Rachel C. MUTHERSBAUGH, fka Rachel C. Neumann, Plaintiff–Respondent— Appellant on Appeal,**

v.

**David NEUMANN, Defendant– Appellant—Respondent on Appeal.**

No. 25164.

Court of Appeals of Idaho.

Dec. 10, 1999.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for appellant. Michael B. Hague argued.

Frederick G. Loats, Coeur d'Alene, for respondent.

PERRY, Chief Judge.

Rachel C. Muthersbaugh appeals from the decision of the district court reversing and remanding the magistrate's judgment of contempt of court against David Neumann. For the reasons set forth below, we reverse the order of the district court.

## I.

## BACKGROUND

The parties were divorced in 1991. On September 2, 1993, the magistrate entered an order amending Neumann's obligation to pay child support as stipulated to by the parties. The stipulation and order modifying child support was reached by the parties in an apparent attempt to settle an ongoing financial dispute concerning the payment of support. The parties agreed that the stipulated modification was fair and equitable. On June 9, 1994, Muthersbaugh filed an application for an order to show cause (OTSC). She requested that Neumann be required to show cause why he should not be held in contempt of court for failing pay the stipulated and court-ordered child support for the months of January, May and June, 1994.

The application for the OTSC was supported by Muthersbaugh's affidavit and cited relevant sections of the Idaho Code. The affidavit alleged that a valid court order existed and that Neumann or his attorneys were served with a copy of the stipulation and order for child support and/or had personal knowledge of its contents. The affidavit also alleged that Neumann violated both the stipulation and the court's order by paying only $600 in January and no child support for the months of May or June.

The magistrate issued an OTSC on June 9, 1994, ordering Neumann to show cause why he should not be held in contempt of court for failure to pay child support. The hearing on the OTSC was scheduled for June 20. The OTSC stated that in the event Neumann failed to notify the court and Muthersbaugh of his intent to call witnesses or present testimony, the court would "enter an order against you in accordance with this order to show cause."

Neumann failed to appear on the date scheduled for the hearing on the OTSC, and a bench warrant was issued. On July 11, counsel for Neumann entered an appearance. A renewed OTSC was issued on July 19. Neumann again failed to appear at the hearing on the renewed OTSC. A second renewed OTSC and another bench warrant were issued. Yet again, Neumann failed to appear. Neumann's counsel moved for, and was granted, leave to withdraw as counsel of record. The magistrate issued a third bench warrant for Neumann's arrest for his failure to appear at the OTSC hearing.

On October 25, Neumann's present counsel first appeared in the case. Also on that date, Neumann moved to dismiss the contempt proceedings, asserting that the affidavit in support of the original OTSC did not allege a willful violation of the order for child support. Neumann also alleged that the OTSC was invalid in that it failed to advise him of the possible sanctions that the magistrate might impose. On October 26, a third renewed OTSC was issued.

On October 31, 1994, Neumann paid his past-due child support. On November 1, a hearing on Neumann's motion to dismiss the contempt proceedings was held. On Novem-

ber 9, the magistrate orally denied the motion.

On December 21, 1994, Muthersbaugh filed an amended application for an OTSC and an affidavit in support thereof. On February 8, 1995, the magistrate issued an OTSC requiring Neumann to show cause why he should not be held in contempt of court for a willful violation of the child support order due to his failure to pay portions of his child support obligations for January through October 1994. On February 17, Neumann unsuccessfully moved to dismiss the OTSC.

On March 6, 1995, a hearing on the OTSC was held. On July 18, an order incorporating the magistrate's orally pronounced findings of fact was issued finding Neumann in contempt of court for a willful violation of the child support order. Neumann was sentenced to sixty days in jail, given credit for time served, and ordered to pay a fine. The sentence was suspended subject both to Neumann's timely compliance with all court ordered support obligations for one year, and Neumann's payment of his support arrearage. If Neumann complied, the finding of contempt would be purged.

Neumann appealed to the district court from the judgment and order finding him in contempt of court. On October 30, 1998, the district court issued its decision reversing and remanding the judgment of contempt entered by the magistrate. Muthersbaugh appeals.

## II.

## ANALYSIS

■ On review of a decision of the district court, rendered in its appellate capacity, we examine the record of the trial court independently of, but with due regard for, the district court's intermediate appellate decision. *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

### A. Initiating Affidavit

On appeal from the magistrate, the district court determined that Muthersbaugh's initiating affidavit was fatally defective. Muthersbaugh argues that the district court erred

when it concluded that her affidavit was required to contain an allegation of "willfulness." She asserts that allegations of knowledge of the court order and failure to comply with that order, as set forth in her affidavit, were sufficient to vest the magistrate with jurisdiction over the matter.

■ Contempts are of two classes—direct, which occur in the immediate presence of the court, and indirect, which occur outside the presence of the court. *Jones v. Jones,* 91 Idaho 578, 581, 428 P.2d 497, 500 (1967). Neumann's failure to pay court-ordered child support did not occur in the immediate presence of the court and, thus, his contempt was indirect in nature.

■ Idaho Code Section 7–603 provides that in the case of indirect contempt "an affidavit shall be presented to the court or judge of the facts constituting the contempt." The affidavit on which an indirect contempt proceeding is based constitutes the complaint, and its function is to apprise the alleged contemnor of the particular facts of which he or she is accused so that he or she may meet such accusations at the hearing. *Jones,* 91 Idaho at 581, 428 P.2d at 500. In a case of indirect contempt, when an affidavit of the facts constituting the contempt is required by statute, the court presiding over the contempt hearing acquires no jurisdiction to proceed until a sufficient affidavit has been presented. *Bandelin v. Quinlan,* 94 Idaho 858, 860, 499 P.2d 557, 559 (1972). Since contempt proceedings are quasi-criminal in nature, no intendments or presumptions may be indulged to aid the sufficiency of the affidavit. *Id.*

■ In the context of an alimony or child support contempt proceeding, the courts of most jurisdictions "subscribe to the view that it is not incumbent upon the movant to make [an allegation of willfulness]." V. Woerner, Annotation, *Contempt – Alimony or Child Support,* 53 A.L.R.2d 591, 593 (1957). This view is:

[B]ased upon the theory that, as the trial court's order fixing the amount was made . . . after due inquiry into the alleged contemnor's financial condition . . . a showing of the making of the order and of the

alleged contemnor's default makes out a prima facie case of contempt.... [T]he fact that the alleged contemnor's ability to comply is a matter peculiarly within his own knowledge, the facts ordinarily not being available to the movant, so that the movant could not easily produce evidence to sustain the proposition, and injustice would frequently result if it was made incumbent upon the movant to plead ... the alleged contemnor's ability to comply. *Id.* In Idaho, before a magistrate orders child support, it considers the financial resources, needs, and obligations of both parents. *See* I.C. § 32–706.[1]

Moreover, in the domestic relations arena, the Idaho Supreme Court has previously held that an allegation of willfulness is not required in the initiating affidavit. *See Parker v. Parker*, 97 Idaho 209, 213, 541 P.2d 1177, 1181 (1975) (The ability of one charged with contempt for disobedience of an order to comply therewith need not, under most authorities, be alleged in the initiatory affidavit or complaint, although there is authority to the contrary.); *In Re Martin*, 76 Idaho 179, 186, 279 P.2d 873, 877 (1955) (When an affidavit alleging failure to comply with court ordered child support is filed within ten months after the order was entered, no allegation of ability to make payments is necessary.). In *Parker*, the Supreme Court stated:

It is not uncommon in divorce actions that pending the final property settlement the husband has control of the community property and the wife is unaware of what assets the husband has available for payment of the attorney fees and alimony he has been ordered to pay. If the husband has failed to make the payments that were ordered, and the wife is honestly unaware of whether he has the ability to make the payments and cannot ascertain his ability to pay with reasonable diligence, she could not truthfully aver in her affidavit that she believes he has the ability to comply with the order. In such cases, to require the wife to so allege in her affidavit accompanying the motion in order to hold the

husband in contempt for failure to comply with the orders of the court would present the wife with the dilemma of either (1) perjuring herself by averring that she knows the husband has the ability to comply with the order and he has failed to do so, or (2) foregoing the remedy of contempt to force compliance with the order. *Parker*, 97 Idaho at 213, 541 P.2d at 1181. This Court finds the reasoning in *Parker* applicable in the context of contempt proceedings for the failure to pay court-ordered child support.

Finally, this Court has previously held that an initiating affidavit, which averred that the defendant had knowledge of the court order and that payments were not made, "presented a prima facie case for contempt [for failure to pay court ordered child support] and was sufficient to provide the magistrate with jurisdiction." *Nab v. Nab*, 114 Idaho 512, 516, 757 P.2d 1231, 1235 (Ct.App.1988). Thus, an allegation of willfulness was unnecessary in the initiating affidavit insofar as a contempt proceeding for failure to pay child support.

Neumann relies on *State v. Tanner*, 116 Idaho 561, 777 P.2d 1234 (Ct.App.1989) in support of his contention that an allegation of willfulness was required in Muthersbaugh's initiating affidavit. In *Tanner*, an indirect contempt proceeding was pursued due to Tanner's failure to comply with an order directing him to either obtain a driver's license or pay a fine for driving without a valid license. Insofar as Tanner's assertion that the initiating affidavit was insufficient, this Court stated:

The initiating affidavit must allege that the contemnor was either served with, or had actual knowledge of, the judgment or order which he is charged with having violated. *See Nab v. Nab*, 114 Idaho 512, 757 P.2d 1231 (Ct.App.1988). It must allege a willful violation. The affidavit on which contempt proceedings are based constitutes a verified complaint and its function is to apprise the alleged contemnor of the particular conduct of which he is accused so that he may meet such accusation at the

---

1. Although not controlling of our disposition, we find noteworthy that the support amount alleged-

ly not paid in this case was actually stipulated to by the parties.

hearing. *Jones v. Jones*, 91 Idaho 578, 428 P.2d 497 (1967).

*Tanner*, 116 Idaho at 564, 777 P.2d at 1237. Thus, according to Neumann's interpretation of *Tanner*, an allegation of willfulness is always necessary in the initiating affidavit of an indirect contempt proceeding. However, in *Tanner* five issues were raised on appeal. An assertion that the initiating affidavit was defective for its failure to include an allegation of willfulness was *not* one of them. Thus, the *Tanner* Court's statement, as it pertains to a willfulness requirement in the instant case, must be viewed as dicta. This Court further notes that the statement relied on by Neumann in *Tanner*, requiring that willfulness be alleged in an initiating affidavit, is wholly unsupported by citation to legal authority or precedent. Finally, *Tanner* was not a domestic relations case and, thus, it is distinguishable from the case at bar. For all of the foregoing reasons, we hold today that the language in *Tanner*, insofar as it can be read to require an allegation of willfulness in the initiating affidavit of an indirect contempt proceeding for enforcement of court ordered child support, is to be disregarded.

Thus, the district court erred when it concluded that Muthersbaugh's initiating affidavit was insufficient to vest the magistrate with jurisdiction over the indirect contempt proceeding.

**B.   Notice of Possible Sanctions**

On appeal from the magistrate, the district court determined that, in an indirect contempt proceeding, notice of the possible sanctions must be given in the order to show cause. The district court therefore concluded that the OTSC was also fatally defective. Muthersbaugh contends that the OTSC adequately informed Neumann of the possible sanctions against him. She directs this Court to her application for the OTSC, which specifically stated that it was based on "I.C. § 7–601 et. seq." She also asserts that there was evidence at the show cause hearing that Neumann was aware that jail was a possible sanction in support of her claim that proper notice was provided.

Muthersbaugh relies on *In re Williams*, 120 Idaho 473, 817 P.2d 139 (1991) in support

of her contention that Neumann had adequate notice of any possible sanctions. However, in that case, the Court held that contempt for an attorney's failure to appear was a hybrid of both direct and indirect contempt that is best dealt with in a direct contempt manner. In contrast, the contempt in the instant case is not a hybrid of direct and indirect contempt, but solely one of indirect contempt. Thus, *Williams* is distinguishable from the instant case and Muthersbaugh's reliance on it is misplaced.

In *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169 (1988), the Idaho Supreme Court addressed the procedural due process requirements due a defendant in an indirect contempt proceeding. A person charged with contempt under I.C. § 7–601 is entitled to certain procedural due process protections before the court can impose sanctions. *Ross*, 114 Idaho at 838, 761 P.2d at 1190. He or she is entitled to notice of the exact charges, proof of knowledge of the terms of the court's order allegedly violated, notice of the sanctions which might be imposed (fine or jail term), and a trial or hearing on the charges raised. *Id.* This Court does not read the language of *Ross*, however, as requiring that the OTSC itself contain notice of possible sanctions in order to satisfy due process. So long as the contemnor is provided reasonable notice of the possible sanctions before admitting or denying the contempt allegation, due process, insofar as notice of those sanctions, is satisfied. Thus, the district court erred when it concluded that the OTSC in the instant case was fatally defective because it failed to include notice of possible sanctions.

On February 21, 1992, an OTSC hearing was held before the magistrate wherein Neumann was required to show cause why he should not have been held in contempt of court for violating various court orders, none of which dealt with the nonpayment of child support. After finding Neumann in contempt, the magistrate stated:

If it were a child support … matter, I would, of course, send him [Neumann] directly to jail…. The reason [for doing so is] … [the] children would have had to do

without during that time that this amount was not being paid. It creates a hardship upon them to the extent that they do not receive the funds when they are due.

Thus, Neumann was aware, before the instant contempt proceeding ever began, that if he were found in contempt for failing to pay court-ordered child support, the magistrate would impose a jail sentence.

Moreover, in *Ross*, the Court noted that the plaintiff's motion made no reference to I.C. § 7–601 and that during the proceedings counsel was not advised that the defendant was being charged with contempt under I.C. § 7–601 or the nature of the contempt proceedings. In stark contrast to *Ross*, Muthersbaugh's application for the OTSC stated that she was requesting that Neumann be held in contempt of court pursuant to "I.C. § 7–601 et. seq." Idaho Code Section 7–610 states that, as punishment for contempt of court for the failure to pay support of minor children, the contemnor may be imprisoned for a term not exceeding thirty days. Thus, Neumann was aware, by virtue of the application for the OTSC, that imprisonment was possible.[2]

Therefore, the record before this Court demonstrates that Neumann was notified of the possibility that the magistrate could, and indeed would, impose a period of jail time if it found Neumann in contempt of court for the failure to pay his court-ordered child support obligation before he denied being in contempt. Thus, the imposition of that sentence did not violate due process.[3]

### III.

### CONCLUSION

We hold that an initiating affidavit in an indirect contempt proceeding regarding the failure to pay child support need not contain an allegation of willfulness. Thus, Muthersbaugh's affidavit in this case, wherein she alleged that a lawful court order existed requiring that Neumann pay child support, that Neumann had knowledge of that order, and that Neumann had failed to comply with that order, was sufficient to vest the magistrate with jurisdiction over the contempt action. Moreover, we hold that an order to show cause is not fatally defective if it does not contain notice of possible sanctions. So long as the contemnor is provided notice of the possible sanctions before admitting or denying the contempt allegation, due process, insofar as notice of the possible sanctions, is satisfied. Neumann was provided such notice in the instant case. Therefore, the decision of the district court reversing magistrate's judgment of contempt is reversed. Costs, but not attorney fees, are awarded to appellant, Muthersbaugh, on appeal.

Judge SCHWARTZMAN, and Judge Pro Tem MCDERMOTT, concur.

---

2. At the time the application for the OTSC was filed, Neumann was proceeding pro se. He contends that, because of his pro se status, he should not be held to the same standard of knowledge as an attorney. However, the Idaho Supreme Court has repeatedly held that a pro se litigant will be held to the same standards and rules as those represented by an attorney. *Everhart v. Washington County Road and Bridge Dept.*, 130 Idaho 273, 275, 939 P.2d 849, 851 (1997). Thus, Neumann's contention is without merit.

3. This Court notes that neither Muthersbaugh's original application for an OTSC or her amended application for an OTSC were "count pled," *i.e.* they did not allege a separate contempt for each and every month Neumann had failed to pay his court-ordered support obligation. Thus, although not an issue on appeal before either the district court or this Court, Neumann may not have been provided sufficient notice regarding the sixty-day jail term ultimately imposed by the magistrate. However, since Neumann did not raise this issue, we do not address it. *See Baker v. Sullivan*, 132 Idaho 746, 748–49, 979 P.2d 619, 621–22 (1999).