504 P.2d 1199

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Erma PALMLUND, d/b/a People's Denture Service, Defendant-Respondent.**

**No. 10947.**

Supreme Court of Idaho.

Dec. 29, 1972.

W. Anthony Park, Atty. Gen., Stewart A. Morris, Asst. Atty. Gen., Boise, for plaintiff-appellant.

Merlyn W. Clark, Lewiston, for defendant-respondent.

BAKES, Justice.

The State of Idaho (hereinafter appellant) filed this appeal to contest the district court's order granting dismissal of its contempt charge against Mrs. Erma Palmlund, doing business as People's Denture Service (hereinafter respondent).

In her business, respondent engages in various practices concerning the repair and relining of dental prosthetic appliances. In October, 1968, appellant, on behalf of the Idaho Board of Dentistry, filed a complaint in the district court of the Second Judicial District against respondent to have her enjoined from performing activities which constitute the unlicensed practice of dentistry as defined in I.C. 54–901. Based on relevant affidavits and motions, the court issued a temporary restraining order against respondent and ordered her to show cause why the injunction should not issue. After the show cause hearing, the court issued a preliminary injunction which delineated specific activities which respondent was prohibited from undertaking. In January of 1969, respondent and

appellant, through counsel, stipulated to the entry of a permanent injunction order which incorporated by reference the terms of the preliminary injunction. On March 1, 1971, appellant filed a petition in the same district court to punish respondent for contempt arising out of respondent's alleged violation of the injunction. Accompanying the petition were the affidavits of two investigators which detailed activities which respondent allegedly performed in violation of the injunction. The show cause hearing founded on these documents was conducted on March 26, 1971. At the close of appellant's presentation of evidence at the hearing, respondent's motion for dismissal (I.R.C.P. Rule 41(b)) was granted by the district court. From the district court's order, appellant has appealed to this court.[1]

Fundamental to the disposition of this appeal are two issues, one raised by respondent and one by appellant. Respondent contends that the district court had no jurisdiction to hear the contempt charge because appellant's initiating petition and affidavits were deficient. Appellant contends that it introduced sufficient evidence of the activities of respondent which violated the injunction to avoid the involuntary dismissal granted by the district court.

We first consider respondent's contention that the district court lacked jurisdiction to rule on appellant's petition charging respondent with contempt because of a defective initiating petition. The alleged contempt by respondent is properly characterized as an indirect contempt—i. e., a contempt committed out of the presence of the court. According to I.C. § 7–603, "When the contempt is not committed in the immediate view and presence of the court, or judge at chambers, an affidavit shall be presented to the court or judge of

1. Although not raised by the parties here, and thus not considered by this court, a question exists under Idaho law whether or not an appeal lies from a judgment in a proceeding on contempt. See I.C. 7–614; Jones v. Jones, 91 Idaho 578, 428 P.2d 497 (1967) (See particularly the specially concurring opinion of Taylor, C.J.). For the possible constitutional problem which I.C. 7–614 raises, see the recent decision of the Delaware Supreme Court in Gaster v. Coldiron, 294 A.2d 384, decided September 6, 1972.

the facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officer." As to the consequence and requisite sufficiency of such affidavit, the case of Jones v. Jones, 91 Idaho 578, 428 P.2d 497 (1967) is instructive. *Jones* involved a contempt charge against the defendant for his alleged failure to comply with a child support order. On appeal, this court concluded that the trial court lacked jurisdiction to consider the contempt charge since the initiating affidavit was deficient in that it "did not contain any allegation to the effect that the child support order was served upon [the contemner] or his attorney, or that he had actual knowledge thereof." Jones v. Jones, *supra* at 581, 428 P.2d at 500. The court thus remanded the case for further proceedings including leave to the plaintiff to amend the affidavit. In its opinion, the court in *Jones* enunciated these principles:

"The affidavit on which contempt proceedings are based constitutes the complaint, and its function is to apprise the alleged contemnor of the particular facts of which he is accused, so that he may meet such accusations at the hearing.

"In a contempt proceeding the court acquires no jurisdiction to proceed until a sufficient affidavit is presented. (Citations omitted). Since contempt proceedings are quasi-criminal in nature, even though designed to impose punishment for violation of an order made in a civil action, no intendments or presumptions may be indulged to aid the sufficiency of the affidavit." (Citations omitted).

*"The initiating affidavit must allege that the contemnor or his attorney was served with the order which he is charged as having violated . . . or that he had actual knowledge of it.* (Citations omitted).

" . . . Where the affidavit fails to allege all essential material facts, however, such deficiencies cannot be cured by proof supplied at the hearing, (Citations omitted), or by judicial notice of the court's own records. State v. Lenske, *supra* [243 Or. 477, 405 P.2d 510]." Jones v. Jones, *supra*, at 581, 428 P.2d at 500. (Emphasis added).

Knowledge of the order is an essential constituent element of contempt according to *Jones*. Given this premise, the court in *Jones,* denominating contempt as quasi-criminal in nature, adopted the criminal law rule that a criminal court acquires no subject matter jurisdiction unless the initiating accusatory document (indictment, information or complaint) is sufficiently particular to state a public offense. In order to state a public offense, the accusatory document must recite all the requisite elements of the offense. Applying the criminal law rule to the circumstances then at hand, the *Jones* court concluded that the district court had no jurisdiction over the matter since the initiating affidavits, the basis of the action, did not recite that the alleged contemner had knowledge of the order he was charged with infringing. Jones, *supra*, at 581, 428 P.2d 500.

The distinction between civil and criminal contempts has not been entirely clear. As stated by the United States Supreme Court in the landmark case of Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1910):

"Contempts are neither wholly civil nor altogether criminal. And 'it may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both.' Bessette v. W. B. Conkey Co.[,] 194 U.S. [324] 329, 24 S.Ct. 665, 48 L.Ed. [997] 1002. But in either event, and whether the proceedings be civil or criminal there must be an allegation that in contempt of court the defendant has disobeyed the order, and a prayer that he be attached and punished therefor. It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. *If it is for civil contempt the punishment is remedial, and for the benefit of the*

*complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.* It is true that punishment by imprisonment may be remedial as well as punitive, and many civil contempt proceedings have resulted not only in the imposition of a fine, payable to the complainant, but also in committing the defendant to prison. But imprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed unless and until he performs the affirmative act required by the court's order." 221 U.S. at 441, 31 S.Ct. at 498. (Emphasis added).

Merely because the charge in this cause can be described as quasi-criminal, Jones, *supra,* and Bandelin v. Quinlan, 94 Idaho 858, 499 P.2d 557 (1972), or criminal, Gompers, *supra,* it is clear from the cases that such an appellation does not, of itself, equate a proceeding for contempt as a criminal prosecution. As the Supreme Court of the United States later said in the case of Blackmer v. United States, 284 U.S. 421, 52 S.Ct. 252, at 256, 76 L.Ed. 375:

"While contempt may be an offense against the law and subject to appropriate punishment, certain it is that since the foundation of our government proceedings to punish such offenses have been regarded as *sui generis* and not 'criminal prosecutions' within the Sixth Amendment or common understanding."

■ Upon reflection, we are of the opinion that a contempt proceeding and a criminal prosecution cannot be deemed absolutely synonymous and, therefore, an *en masse* application of criminal rules, both substantive and procedural, to contempt proceedings is unwarranted. It is both more expeditious and more accurate to say that a contempt proceeding is *sui generis,* a singular type of legal action, and as such gleans its applicable rules from both the civil and the criminal law. *E. g.* People v. Barasch, 21 Ill.2d 407, 173 N.E.2d 417 (1961).

While the courts since *Blackmer* have been wrestling with the problem of how many of the protections of the criminal law are applicable to contempt proceedings, *see* Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1965), Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1967), it is clear that the courts have not gone so far as to state that a criminal contempt proceeding is synonymous with a criminal prosecution. As Mr. Justice Fortas stated in the *Bloom* case in which he concurred in the majority's view that a criminal contempt proceeding which resulted in a two year sentence required a jury trial by virtue of the Sixth and Fourteenth Amendments:

"There is no reason whatever for us to conclude that, in so doing, we are bound slavishly to follow not only the Sixth Amendment but all of its bag and baggage, however securely or insecurely affixed they may be by law and precedent to federal [contempt] proceedings."

■ True it is that the district court's jurisdiction under I.C. 7–603 is founded upon an initiating affidavit which must set out all of the essential elements of the contempt, and that one of the essential elements is knowledge on the part of the contemner or his attorney of the order in which he is alleged to be in contempt. Jones v. Jones, *supra.* An affidavit which does not allege these essential elements of the contempt should be dismissed upon a proper motion having been made in the trial court. Jones v. Jones, *supra.* However, we are of the view that, as in a civil action regarding the defense of failure to state a claim, if a contemner does not raise the defense of failure to allege knowledge of the order by motion at the trial stage, and all of the essential elements of the contempt, including that knowledge, are

**154**

proved by evidence at the trial, then the sufficiency of the initiating affidavit may not be raised for the first time on appeal. 1A Barron & Holtzoff, Federal Practice and Procedure, § 370, p. 511–512, citing Black, Sivalls & Bryson v. Shondell, 174 F.2d 587 (Ca.8, 1949); In re Huff, 352 Mich. 402, 91 N.W.2d 613 (1958).

 The rule we announce today would not change the result in *Jones,* nor in the recent case of Bandelin v. Quinlan, *supra* which repeated the essential pronouncements of *Jones.* In both of those cases, the contemner raised in the trial court the insufficiency of the initiating affidavit by appropriate motion. However, the language in the *Jones* case referring to the "jurisdictional" character of the insufficient initiating affidavit can be construed as engrafting upon contempt proceedings all of the criminal prosecution pleading standards, including the right to raise for the first time on appeal the insufficiency of the initiating affidavit. Our ruling on this issue is limited to the narrow point that the insufficiency of the initiating affidavit cannot be raised for the first time on appeal. We expressly reaffirm the holding in *Jones* and *Bandelin* to the effect that upon a proper motion made in the trial court an insufficient initiating affidavit must be dismissed, subject to the liberal right of amendment as provided in Rule 15(a), Idaho Rules of Civil Procedure.

 Regarding the issue of whether or not there was knowledge of the order in this case, there is no doubt that respondent had actual knowledge both of the issuance and contents of the injunction. Respondent and appellants, through counsel, stipulated to the entry of the permanent injunction in question. Furthermore, respondent made no attack on the sufficiency of the affidavits in her answer (affidavit), or in the proceedings at trial. All through the

proceedings, respondent, implicitly at least, indicated that she knew of the contents of the injunction. Her motion to dismiss was based not on any failure of the affidavits to adequately advise her of the claim against her, but upon the failure, in her view, of appellant to introduce sufficient evidence of acts performed by her in violation of the injunction as she construed it.

For reasons articulated below it will be necessary to remand the proceedings to the district court. Therefore, the affidavits may properly be attacked by respondent for their failure to recite all the essential elements of the contempt. On considering such attack, the district court should, consonent with the liberal amendment policies of the rules of civil procedure, grant appellant leave to amend to supply the necessary recital. I.R.C.P. Rule 15(a).

Concluding that respondent's attack on the pleadings was not properly raised for the first time on appeal, it is incumbent upon us to consider appellant's challenge concerning the propriety of the district court's order granting dismissal. An involuntary dismissal in a nonjury case such as that granted by the district court is sanctioned by I.R.C.P. Rule 41(b) [2] However, it is our view that the trial court erred in granting the defendant's motion for involuntary dismissal. In arriving at the dismissal, the trial court stated:

> "Reasonable minds can differ as to whether or not this act did or did not violate this restraining order—or this injunction to constitute a contempt. Therefore, the court for that reason and reason alone must dismiss—or grant a motion to dismiss and dismiss this action and find that the defendant is not in contempt of court." Rptr. Tr. p. 77.

In our opinion, the state did introduce sufficient evidence which reasonably established a prima facie case of contempt.

---

2. "Rule 41(b). Involuntary dismissal—effect thereof.— . . . . After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. . . ."

For the applicable standard in non-jury cases, see Stratton v. Stratton, 87 Idaho 118, 391 P.2d 340 (1964).

 

The permanent injunction stipulated by the parties proscribed respondent from engaging in the following activities: (1)"from performing any acts or services in connection with dental prosthetic appliances which require or necessitate the presence and assistance or cooperation of the wearer or user of such appliances;" (2) "from examining the mouth of the wearer of prosthetic appliances or examining such appliances in the wearer's mouth for the purpose of diagnosis, treatment, repair, replacement or correction;" (3) "from taking impressions of the mouth or within the mouth for the purpose of relining dentures, repairing dentures or making new dentures whether such impressions be taken or made by [respondent], her agents or employees themselves, or by the wearer of the teeth under the supervision or direction of [respondent], her agents or employees;" and (4) "from fitting, adjusting or correcting a prosthetic appliance in the wearer's mouth or diagnosing a necessity for such corrections with the assistance of carbon paper, indicator paste or visual observation of the appliance in the mouth of the wearer." [3]

The uncontradicted testimony of the appellant state's two investigator-witnesses, Mrs. Priest and Mrs. Gomez, described several acts by respondent which, on their face, were violations of the injunction. Capsulizing the two witnesses' expositions, it is evident that respondent took the impressions of the mouths of both witnesses for the purpose of relining their dentures, examined or "looked in" the mouths of both witnesses for the purpose of diagnosis, repair or replacement of dentures, and performed services in connection with the dentures of both witnesses which arguably required the presence and assistance of the wearer-witnesses.

 The final element of the contempt—that the respondent had knowledge of the injunction against her—was also established. The entry of the permanent injunction was accomplished through stipulation of both parties, and that fact can be found in the district court's own records. Thus, although no evidence was presented concerning respondent's knowledge of the injunction, the court could properly take judicial notice of its own records as evidentiary proof that the knowledge element was fulfilled. *See* State v. Lenske, 243 Or. 477, 405 P.2d 510, 514 (1965). Thus, the unequivocal testimony of the two witnesses constituted at least prima facie proof that respondent performed acts in violation of the injunction.

Reversed and remanded. Costs to appellant.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.

---

3. The constitutionality of the injunction has not been attacked. We note, however, that the injunction suffers from no constitutional infirmity since it complies with the standards evolved from the "Berry cases." *See* Berry v. Summers, 76 Idaho 446, 283 P.2d 1093 (1955); Berry v. Koehler, 84 Idaho 170, 369 P.2d 1010 (1961); Berry v. Koehler, 86 Idaho 225, 384 P.2d 484 (1963); Berry v. District Court, 91 Idaho 600, 428 P.2d 519 (1967). *See also* Board of Dentistry v. Barnes, 94 Idaho 486, 491 P.2d 1258 (1971).