97 P.3d 468

Orzetta Lynn GRECIAN, Plaintiff–Respondent,

v.

Bryce L. GRECIAN, Defendant–Appellant.

No. 29630.

Court of Appeals of Idaho.

June 3, 2004.

Review Denied Sept. 3, 2004.

Rude, Jackson Daugharty, Coeur d'Alene, for appellant. Dan J. Rude argued.

Powell Reed, Sandpoint, for respondent. Todd Mathew Reed argued.

LANSING, Chief Judge.

In divorce proceedings the magistrate court ordered a distribution to the wife of one-half of the funds accumulated in a 401(k) plan associated with the husband's employment. The divorce decree provided that the distribution would be based upon the value of the assets in the plan on the date of termination of the marriage. The question presented on appeal is whether, under the magistrate's subsequent qualified domestic relations order, the parties were to share equally the loss in the plan's value, caused by a stock market decline, between the date of dissolution of the marriage and the date of the distribution.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Orzetta Lynn Grecian filed a petition for divorce from Bryce L. Grecian. A partial decree dissolving the marriage was entered by the magistrate court on May 11, 2000. This partial decree left for future resolution the division of the parties' property, which included funds in a 401(k) plan acquired through Bryce's employment. The parties ultimately stipulated to the valuation and division of assets. On October 19, 2000, the magistrate entered a final decree based upon the stipulation. The final decree ordered that the funds in the 401(k) plan be divided evenly between the parties as of the marriage dissolution date, May 11, 2000, when the plan had a value of $64,011.46. However, the decree also reserved jurisdiction to enter further orders necessary to make a distribution of the plan. On January 30, 2001, the

magistrate entered a qualified domestic relations order (QDRO), which was also presented by stipulation, providing for the final distribution. In March 2001, Orzetta sought to liquidate her interest by submitting the QDRO to the administrator of the 401(k) plan. By this time, however, due to a decline in the stock market, the value of the plan had decreased to $45,263.31. The administrator distributed to Orzetta $22,261.00, one-half of the then-current value of the plan.

Orzetta filed a petition seeking enforcement of the divorce decree. The petition requested a judgment for an additional amount, asserting that the divorce decree entitled her to one-half of the plan's value as of May 11, 2000, rather than as of the date of liquidation. The magistrate granted Orzetta's request and entered a judgment against Bryce in the amount of $9,742.42. Bryce appealed to the district court, which affirmed with respect to Orzetta's entitlement to an additional $9,742.22, but modified the order with respect to the method of payment. The district court held that Orzetta was entitled to recover the funds only from the plan itself and not directly from Bryce. Bryce now further appeals.

## II.

## ANALYSIS

■ In reviewing a decision of the district court rendered in its appellate capacity, we review the record of the magistrate court independently of, but with due regard for, the district court's decision. *Worzala v. Worzala,* 128 Idaho 408, 411, 913 P.2d 1178, 1181 (1996); *McAffee v. McAffee,* 132 Idaho 281, 284, 971 P.2d 734, 737 (Ct.App.1999).

Bryce contends that the magistrate erred in concluding that the date from which the value of the plan was to be ascertained was the date of the dissolution of the marriage. He argues that the language used in the QDRO is contrary to that of the divorce decree in that the QDRO provides Orzetta half of the plan's value at the time of distribution. He asserts that, under contract principles, the QDRO is the controlling document and should therefore be used in determining the distribution of the plan.

■ The rules applicable to construction of contracts generally apply to the interpretation of divorce decrees. *Toyama v. Toyama,* 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996); *DeLancey v. DeLancey,* 110 Idaho 63, 65, 714 P.2d 32, 34 (1986). If the language of the decree is unambiguous, the determination of its meaning and legal effect is a question of law over which free review is exercised. *Id.* If the language is reasonably susceptible to differing meanings, however, it is deemed ambiguous and determination of its meaning is a question of fact. *Id.* A magistrate's interpretation of a divorce decree will be upheld on review if it is supported by substantial and competent evidence. *Ireland v. Ireland,* 123 Idaho 955, 958, 855 P.2d 40, 43 (1993). Having reviewed the documents at issue here, we conclude that the provisions relied upon by Bryce are unambiguous, and therefore, subject to free review.

■ Contrary to Bryce's assertion, the divorce decree and the QDRO are not inconsistent with respect to the dates set for valuation of the plan. The divorce decree states:

> The Plaintiff [Orzetta] shall receive 50% of the 401(k) plan *as to the amount in the plan as of the date of divorce which is May 11, 2000.* This plan and the total amount of $64,011.46 are set forth as item No. 112 on the attached Inventory of Property.... The Court specifically reserves jurisdiction over the distribution of the 401(k) plan benefits to enter such further orders as may be necessary to distribute the Plaintiff's share of the 401(k) plan benefits as set forth above.

(emphasis added). The subsequently entered QDRO, in paragraph 11, ordered distribution as follows:

> An amount equal to the actuarial equivalent of 50 percent of the marital portion of the benefits and benefit rights that had accrued with respect to the Participant [Bryce] under the Plan *as of the marriage termination date* is hereby assigned and transferred to the Alternate Payee [Orzetta]. The amount of the Alternate Payee's benefits under this Order shall consist of FIFTY PERCENT (50/50) of the marital

portion of the Participant's accrued benefits and benefit rights *as of the marriage termination date,* subject only to the provisions of Paragraph 15 of this Order and any actuarial or other adjustments of such benefits that may be required by the terms of the Plan.

(emphasis added). It is clear from these provisions, the language of which does not conflict, that the marriage dissolution date was the intended valuation date for calculating Orzetta's share of the 401(k) plan. Under neither the divorce decree nor the QDRO does there appear any other date which could be interpreted as the intended valuation date.

■ Bryce contends, however, that Paragraph 15 of the QDRO specifies that the parties are to share, pro rata, any increase or decrease in the value of the plan caused by stock market fluctuations. The pertinent part of Paragraph 15 states:

If, because of the distribution limits imposed by Section 415 of the Internal Revenue Code or otherwise, the aggregate amount of benefits payable under the plan to or on account of the Participant is reduced, any such reduction shall be shared by the parties on a pro rata basis....

Bryce's proffered interpretation of this paragraph is unsupportable. This provision does not refer to any loss or gain caused by fluctuations in market value. Rather, it plainly relates to limits on distributions imposed by law. Paragraph 11 of the QDRO is subject to modification by Paragraph 15 only to the extent that Paragraph 15 has application, and it has no application here. The magistrate was correct in concluding that Orzetta's share of the 401(k) plan was to be determined by the value on the date of dissolution of the marriage.

■ Bryce also contends that Orzetta is prohibited from seeking a judgment for additional proceeds from the plan because she has already accepted $22,261.00 from the plan. Relying upon *Miller v. Miller,* 88 Idaho 57, 396 P.2d 476 (1964), Bryce argues that a party cannot accept the benefits of a decree and thereafter attack provisions of the decree. This argument is without merit, for *Miller* is inapplicable here. In *Miller,* a divorce decree divided the marital property and provided that the husband was to pay alimony to the wife for five years. When the husband stopped making alimony payments after about one year, the wife sought enforcement of the decree. In response the husband argued that the divorce decree was void because the manner in which it was entered was against public policy. The Supreme Court declined to consider the husband's challenge to the validity of the divorce decree because he had accepted the benefits of the decree that he was now attacking:

Since entry of the decree appellant has remarried; but he now complains that the entry of the decree in the manner it was done, was against the public policy. This he cannot do, for having accepted the benefits of such decree, he is now estopped from attacking it.

*Id.* at 61–62, 396 P.2d at 478. In the present case, Orzetta does not challenge the validity of the divorce decree; rather, she seeks its enforcement. She is attempting to collect all amounts awarded to her by that judgment. There has been no inconsistency in her position and there is no basis for application of estoppel.

Lastly, Bryce contends that the magistrate erred by effecting an unequal distribution of the 401(k) plan. We disagree. The court did not make an unequal distribution. Both the divorce decree and the QDRO call for an equal division of the 401(k) plan. The perceived inequality is the result of a falling stock market that occurred after the entry of those orders. The date at which the value was to be determined, as set forth in the divorce decree and the QDRO, was agreed upon by the parties. There was no unequal distribution.

We agree with the district court, however, that the magistrate's order requiring payment of the additional sum to Orzetta by Bryce must be modified to provide instead for payment of the additional amount as a distribution from the funds in the 401(k) plan. As the district court held, Orzetta is entitled to an additional distribution from the plan, not a money judgment against Bryce. Accordingly, the order of the district court, modifying the magistrate's order, is affirmed.

This matter is remanded to the magistrate court for further action as necessary to effect distribution of the balance owed to Orzetta from the 401(k) plan. Costs on appeal to respondent.

Judge GUTIERREZ and Judge Pro Tem WOOD concur.