**Gary Richard BRADLEY, Appellant,**

v.

**Terri Lynn BRADLEY, Respondent.**

**No. WD 65002.**

Missouri Court of Appeals, Western District.

June 30, 2006.

Gary R. Bradley, Lexington, MO, Appellant acting pro se.

Brett A. Emison, Esq., Lexington, MO, Respondent.

Before: LOWENSTEIN, P.J., ELLIS and NEWTON, JJ.

HAROLD L. LOWENSTEIN, Judge.

The issue at the heart of this case involves the proper valuation date of marital profit-sharing accounts ("Qualified Domestic Relations Order"). As the reader will note, extensive gaps in time exist among the following dates: trial (July 9, 2002), the dissolution decree with valuation and division of assets (March 31, 2003), and the dates of the Orders for the accounts in question (March 31, 2004, July 13, 2004, and December 21, 2004). Gary Bradley[1] appeals from a trial court judgment amending the entry of three qualified domestic relations orders (QDROs) entered pursuant to a dissolution decree of the marriage of Gary (Husband) and Terri Bradley (Wife).[2] The amended QDROs value the investment property at the date of their entry,[3] rather than the *date of trial*, July 9, 2002, or the date of the decree, March 31, 2003. A timeline of relevant events is contained in footnote nine. This court reverses the portion of the judgment that values the profit-sharing accounts on the date of actual decree, March 31, 2003, and remands the case with instructions to hear evidence of values of the accounts on the date of entry of the QDROs, March 31, 2004, and then, to consider the economic circumstances at the time the division of property is to become effective, as required under section 452.330.1(1), and, if necessary, to modify the division of marital property.

### Facts

Husband and Wife were married in 1985. The couple separated on March 15,

1. This opinion refers to the parties as Husband or Wife.

2. The Retirement Equity Act of 1984 allows a QDRO under 29 U.S.C.S. § 1056(d)(3) to avoid the general prohibition against the assignment or alienation of pension/profit sharing benefits. *Offield v. Offield,* 955 S.W.2d 247, 248, n. 1 (Mo.App.1997). A QDRO is an

order that recognizes an alternate payee's right to receive all or a portion of the benefits of a participant. 29 U.S.C.S. § 1056(d)(3)(B)(i)(I); *Offield,* 955 S.W.2d at 248 n. 1.

3. The record is silent as to the date the accounts were in fact divided and distributed.

2001. Husband filed for dissolution, although the record does not indicate the date on which he did so. On July 9, 2002, the trial court entered an order dissolving the marriage but continued the matter for the reception of further evidence on the issues of property valuation and division. The trial court then appointed a Special Master to divide those disputed items of the parties' personal property. On March 31, 2003, the trial court issued a decree dissolving the marriage and dividing the marital property.[4]

This appeal involves three of Husband's profit-sharing accounts: a Piper Jaffray account, an American Century account, and a Waddell & Reed account (hereinafter collectively referred to as "the accounts").[5] Husband administered these accounts. On March 15, 2004, the Special Master submitted a Fourth Supplemental Report, which recommended that the valuation date of the accounts be the date of the original Judgment Entry Decree of Dissolution of March 31, 2003. So, one year after the decree of dissolution, March 31, 2004, the three QDROs were issued. The one year delay apparently resulted from the parties' disagreement over "language" contained in the proposed QDROs; however, the exact nature of the disagreement is not clear from the record.[6] The QDROs provided that "immediately after entry of this order, the Plan shall pay directly to Alternate Payee, Terri Lynn Bradley, [the allotted percentage] of the value of the plan as of the date of the dissolution of marriage on March 31, 2003."

Soon after, Wife filed her objections to Fourth Supplemental Master's Report in addition to a motion to set aside the court's order approving Fourth Supplemental Master's Report and the QDROs entered on March 31, 2004. Wife argued that the proper date of valuation of the accounts should be the date that the accounts are actually segregated, rather than the date of the judgment. On May 18, 2004, the trial court held a hearing, wherein the parties argued the issue of the date of valuation. No evidence was presented.[7] On July 13, 2004, the trial court granted Wife's motion, set aside its order approving the Fourth Supplemental Master's Report and the QDROs entered March 31, 2004. The trial court entered three amended QDROs on July 13, 2004, which maintained the proportions, but included the gains and losses in those proportions since March 31, 2004, effective on the date

---

4. The Judgment Entry Decree of Dissolution was amended Nunc Pro Tunc on May 15, 2003. That amendment is not relevant to this appeal.

5. Below is a table outlining the value and division of the three profit-sharing accounts as of the date of the dissolution decree, March 31, 2003:

| Asset | Value | Husband | Wife |
|-------|-------|---------|------|
| Piper Jaffray | $739,890 | 56.35% | 43.65% |
| American Century | $157,056 | 50% + $4990 | 50% - $4990 |
| Waddell & Reed | $ 2,044 | 50% | 50% |

6. It is clear that the delay is not in any way attributable to the trial court. It would appear the delay is due in part to Husband, the Plans' administrator.

7. The only values of the accounts stated in the record are those on the date of dissolution, March 31, 2003. (footnote three) While there is no evidence of this, this court surmises from the arguments of the parties that gains, perhaps substantial, were realized on the accounts.

of actual segregation.[8] Husband appeals the trial court's modification of the QDROs, claiming: (1) the trial court lacked jurisdiction to modify them, or (2) in the alternative, the modification was not supported by substantial evidence because the trial court failed to value all marital property at the time of actual segregation in addition to considering the economic circumstances of the parties at the time.[9]

## Standard of Review

The trial court's decision must be affirmed unless no substantial evidence exists to support the decision, the decision is against the weight of the evidence, or the decision erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court must accept as true the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment and disregard all contrary evidence and inferences. *Ward v. Ward*, 34 S.W.3d 288, 290–91 (Mo.App.2000).

## Analysis

### I. Jurisdiction

■ Husband first contends the trial court lacked subject matter jurisdiction to modify the QDROs. Subject matter jurisdiction exists only when a court has the right to proceed to determine the controversy at issue or grant the relief requested. *Garcia–Huerta v. Garcia*, 108 S.W.3d 684, 686 (Mo.App.2003). Generally, the distribution of marital property constitutes a final order and is not subject to modification. § 452.330.5, RSMo.2000; *Miles v. Miles*, 43 S.W.3d 876, 878–79 (Mo.App. 2001). Section 452.330.5 allows a trial court to modify its order to distribute marital property in two limited circumstances which involve QDROs. Only the second exception is relevant in this case, which permits modification of a judgment dividing marital property in order to "effectuate the expressed intent of the [court's order regarding distribution of property]." *Miles*, 43 S.W.3d at 879 (citing in part § 452.330.5); *Young v. Young*, 152 S.W.3d 887, 888–89 (Mo.App.2005). If a QDRO is involved, the trial court, under the statute, has jurisdiction to revise the terms to effectuate the intent of the order.

■ In the present case, the dissolution decree dated March 31, 2003, which followed the parties' separation agreement, ordered "[Husband's] interest in the [Piper Jaffrey account to be] divided via in a [QDRO] and [Wife] shall receive 43.65% of account balance and [Husband] shall receive 56.35%." Similar provisions were made for the American Century and Waddell & Reed accounts with their respective allocations. The judgment did not assign values to these accounts, nor did it state a date of valuation with respect to these accounts. The next paragraph of the decree stated, "[t]his Court shall retain jurisdiction over the subject matter until all [QDROs] have been approved by the plan administrators and the proceeds have been divided pursuant to the terms of the par-

---

**8.** On December 21, 2004, the trial court issued three amended QDROs in which the sole change was that the QDROs were changed from orders to judgments.

**9.** For ease of reference, the relevant dates to this appeal are as follows:

Date of trial: July 9, 2002, order dissolving marriage and case continued for property valuation and distribution.

Date of dissolution decree (property division): March 31, 2003

Date of original QDROs: March 31, 2004

Date of judgment modifying QDROs: July 13, 2004

Date of first amended QDROs: July 13, 2004

Date of second amended QDROs: December 21, 2004

ties' agreement." [10] Notably, there is no indication in the record that either party objected to the trial court's retention of jurisdiction.[11] The *initial* QDROs, dated one year later on March 31, 2004, stated in relevant part, "[I]mmediately after entry of this order by the Court, the Plan shall pay directly to [Wife], [allocated percentage] of the value of the plan as of the date of dissolution of marriage on March 31, 2003."

On July 13, 2004, the trial court set aside its order approving the Fourth Supplemental Master's Report and set aside the QDROs, stating that it did so in order to effectuate the court's intention that the "segregation, or allocation to each party, of these assets would be accomplished as soon as practicable after entry of the Judgment, using March 31, 2003, as the date for the establishment of values of the assets."

An examination of the March 31, 2003, judgment, together with the original QDROs, show that the trial court envisioned the investment properties to be divided as soon as possible, and set the date of valuation on March 31, 2003, under the belief that the investments would in fact be divided "immediately after entry" of the trial court's March 31, 2003, judgment. Because the actual segregation did not occur, at a minimum, until after March 31, 2004 (the date the initial QDROs were entered), the trial court modified the valuation date of the QDROs to effectuate its intent that the accounts be divided "immediately after entry" of its judgment. This intent is also evidenced by the trial court's

statement of retention of jurisdiction. This court concludes the trial court had jurisdiction under section 452.330.5 to modify the QDROs, and, therefore, Husband's claim that the trial court erred when it modified the QDROs for the purpose of achieving "equitable results," will be denied. *See In re Marriage of Gardner*, 973 S.W.2d 116, 126–27 (Mo.App. 1998).

## II. Valuation Date

Having found the trial court had jurisdiction to modify the QDROs, this court must next determine whether it erred when it valued the accounts as of the date of actual segregation. Husband contends that the proper date of valuation is the date of trial or, if a substantial delay occurred between the trial (July 9, 2002) and the date of the decree (March 31, 2003), then the valuation should be made on or near the date of the decree.

 In a dissolution proceeding, the date of trial is the proper date for valuing marital property. *Taylor v. Taylor*, 736 S.W.2d 388, 391 (Mo. banc 1987). However, "[v]aluation of property should be reasonably proximate to the date the division is to be effective." *In re Marriage of Gustin*, 861 S.W.2d 639, 644 (Mo.App. 1993). "If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible." Id. This is particularly important when the assets are subject to ever

---

10. This is not to suggest that the trial court's statement of retention is what effectively retained its jurisdiction. *See Kolar v. Kolar*, 114 S.W.3d 440, 442 (Mo.App.2003) ("The judgment need not reflect that the circuit court was retaining jurisdiction."). Rather, this court examines the statement to determine the trial court's intent.

11. Again, the information is used in examining the intent outlined in the decree. This court notes that subject matter jurisdiction cannot be conferred by waiver or consent, *Garcia–Huerta*, 108 S.W.3d at 686, so this court's citation of this fact is not intended to imply differently.

changing value. Id. "Volatile market conditions and changing economic circumstances can render assets that had been valuable months or years earlier virtually worthless in the present, and vice versa." *Id.* at 643. The division of property becomes effective on the date the trial court enters its judgment dividing the property. *Luckeroth v. Weng,* 53 S.W.3d 603, 608 (Mo.App.2001).

Here, the date of trial was July 9, 2002. The dissolution decree valuing and dividing the property was issued on March 31, 2003. The initial QDROs were issued precisely one year later on March 31, 2004. Under *Gustin,* the effective date of the division of property in this case was March 31, 2003. Significantly, however, unlike the facts in *Gustin,* this case involved QDROs issued one year *after* the entry of the dissolution decree. The one-year delay apparently resulted from the parties' disagreement over language in the QDROs. Three QDROs were issued in this case so Wife could immediately receive her share of Husband's profit-sharing accounts designated by the dissolution decree.

ERISA prohibits assignment or alienation of pension benefits. § 1056(d)(1). However, in limited circumstances ERISA allows a QDRO to avoid this prohibition. *See* § 1056(d)(3). A QDRO may enforce a non-plan participant's right to child support, alimony payments, or marital property rights previously granted by any judgment, decree, or order, including approval of a property settlement agreement. § 1056(d)(3); *Offield v. Offield,* 955 S.W.2d 247, 248 n. 1 (Mo.App.1997). A plan administrator's obligation to an alternate payee does not arise until the plan receives a domestic relations order. *Gardner,* 973 S.W.2d at 124. Wife could not have received her share of Husband's profit-sharing accounts without the entry of the QDROs. Despite the fact that the dissolution decree of March 31, 2003, designated the percentage of the allocations, these accounts could not have been actually segregated until the QDROs were entered. "[W]here the division of property is not reasonably proximate to the time of trial, the valuation date should be the date of the division of the property." *Wright v. Wright,* 1 S.W.3d 52, 57 (Mo.App.1999). Therefore, this court concludes that the "effective date of distribution" in this case (where the QDROs were entered one year after the dissolution decree) is the date the QDROs were first entered by the trial court, March 31, 2004.

Husband claims that he had not found any Missouri case that directly addresses the propriety of modifying a QDRO in order to give one spouse the benefit of gains that are made upon marital property that is held by the other spouse prior to final distribution. The case of *Gardner v. Gardner, supra,* 973 S.W.2d 116 (Mo.App. 1998), may be instructive. In that case, ex-husband challenged, among others things, the trial court's award of earnings on ex-wife's share in an amended judgment and subsequent amended QDRO retroactive to the original date of valuation on December 31, 1991. Id. at 126. The dissolution decree was entered on September 21, 1993, which provided ex-wife with 50% of a retirement plan that totaled $216,252.50. The decree did not mention accrued earnings or losses. Id. Ex-husband was the administrator of the retirement plan. Id. at 119. The original QDRO was entered on March 1, 1996, which provided that ex-wife was to receive her 50% share in addition to the "accrued earnings and/or losses from December 31, 1991." *Id.* at 119 An amended QDRO, signed by the trial court on June 24, 1997, awarded ex-wife a total of her $216, 252.50 share as of December 31, 1991, plus the earnings

(less losses) on her share from that to December 31, 1995 for a total of $339, 376.89. Id. at 121, 126. In affirming the trial court's award of earnings to ex-wife, the southern district of this court stated the original and amended QDROs "merely confirm what [ex-wife] was awarded in the [September 21, 2003 dissolution decree], and that the [original and amended QDROs] were entered for the purpose of enforcing the [dissolution decree]." Id. at 127. In other words, the court affirmed the trial court's use of a date of valuation beyond that of the date of trial or the date of the dissolution decree. In conclusion, the *Gardner* court stated:

> [Ex-husband's] theory appears to be that because the [decree] did not specifically provide that [ex-wife] was to receive the earnings (or losses) generated by her share in the Plan after December 31, 1991, the decree implicitly awarded such earnings (or losses) to him.

> That is nonsense. The effect of such a construction would be to award one party the earnings (or losses) generated by an adverse party's assets. [Ex-husband] cites no authority supporting such an interpretation.

*Id.*

While *Gardner* does not pen the issue in terms of the date of valuation, but rather, constructs it as the entitlement of earnings and losses on a spouse's undistributed share of a retirement benefit, the issue is nearly identical as in this case, and the facts are strikingly similar. To again recite the relevant facts here, the dissolution decree, dated March 31, 2003, awarded Wife her shares of the accounts totaling nearly $400,000. The dissolution decree did not mention accrued earnings or losses. Husband administered the accounts. The original QDRO, entered March 31, 2004, provided that Wife would receive her shares of the accounts valued as of the date of the decree on March 31, 2003. An amended QDRO, entered July 13, 2004, maintained the proportions, but included the gains and losses in those proportions since March 31, 2003, effective on the date of actual segregation. In accord with *Gardner*, this court directs the trial court to value the accounts on the date of the QDROs (March 31, 2004), in effect awarding Wife the earnings made on her allocated shares.

In support of his argument that Wife is only entitled to the amount that she was originally awarded in the decree, Husband cites to a series of cases that declined to award any interest upon the share of the spouse who awaited actual distribution. This court rejects those cases, as they do not involve the delayed entry of a QDRO. To the contrary, ERISA, the federal law governing retirement plans, explicitly provides for the payment of interest and also requires the payment of "income, gains, or losses" during any period in which the issue of whether a domestic-relations order is qualified is being determined by the plan administrator or by a court. *See* 29 U.S.C.A. §§ 1056(d)(3)(H)(i); 1002(17). While section 1056(d)(H)(i) does not apply in this particular instance because there was no dispute that the domestic relations orders were qualified, this court believes this provision to be highly persuasive. Specifically, section 1056(d)(H)(i) directs a plan administrator to separately account for the alternate payee's share. A "separate account" includes the "income, gains, and losses, whether or not realized, from assets allocated to such account." 29 U.S.C.A. § 1002(17). If it is determined within eighteen months that the domestic relations order is qualified, then the plan administrator "shall pay the segregated amounts (including any interest thereon) to the person ... entitled thereto." 29 U.S.C.A. § 1056(d)(H)(ii). If the orders

are determined not to be qualified, then the plan administrator must pay the "segregated amounts (including any interest thereon) to the person ... who would have been entitled to such amounts if there had been no order." 29 U.S.C.A. § 1056(d)(H)(iii)(II). These provisions allow for the payment of interest and gains on the share of the spouse who awaits a QDRO.

In a final effort to persuade this court to value the accounts on the date of dissolution, Husband cites the Idaho case of *Grecian v. Grecian*, 140 Idaho 601, 97 P.3d 468 (2004). While an intense recitation of the facts in *Grecian* is not warranted here, suffice it to say similarities exist between the present case and *Grecian*, except that substantial losses, rather than gains, were realized in *Grecian*. The court in that case affirmed the magistrate's order of valuing the account on the date of trial, which effectively left the ex-husband to bear the losses sustained between the dates of trial and actual division. Id. at 471, 97 P.3d 468. However, in light of *Gustin*, which requires valuation as reasonably proximate to the effective date of distribution, this court declines to heed *Grecian*.

This court concludes the trial court did not err when it modified the QDROs to reflect a more current value. However, this court disagrees that the correct date of valuation is the date of actual segregation, and reverses the judgment in order to value the accounts on the date of the entry of the original QDROs on March 31, 2004, because as discussed *supra*, the effective date of distribution is the date of entry of the original QDROs. This holding is limited to the unique facts of this case wherein the entry of a QDRO was delayed and is not to be used to extend the date of valuation of marital property in other dissolution cases wherein actual segregation is unnecessarily overdue.

### III. Evidentiary Hearing

■ Husband argues that if a later date for valuation is in order, the trial court erred because it failed to hear evidence of valuation at the time of modification as required under *Gustin*, 861 S.W.2d 639 (Mo.App.1993), and it failed to consider the economic circumstances of the parties before modifying the property division under section 452.330.1(1). This court agrees. On May 18, 2004, the trial court heard arguments, but took no additional evidence.

Therefore, this case is remanded to hear evidence of the values of the accounts on the date the trial court entered the original QDROs on March 31, 2004, and to consider the economic circumstances of the parties at the time the division of property was to become effective. *Gustin*, 861 S.W.2d at 644. ("If the effective date of the distribution is not reasonably proximate to the date of valuation, the court should hold another hearing to establish a valuation as close to the effective date of the division as possible."). If the trial court deems necessary in light of these stated considerations, it shall modify the division of property.

All concur.