**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41639**

| | | |
|---|---|---|
| **BRITANIE BELL,** | ) | **2015 Unpublished Opinion No. 317** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: January 22, 2015** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **MICHAEL EAGY,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael R. McLaughlin, District Judge; Hon. David E. Day, Magistrate.

Order of the district court affirming in part and reversing in part magistrate's order dismissing motion for nonsummary contempt, <u>affirmed</u>.

Miller & Harr, PLLC; John A. Miller, Boise, for appellant.

Ron R. Shepherd, Boise, for respondent.

_____

GUTIERREZ, Judge

Michael Eagy appeals from the decision of the district court affirming in part and reversing in part the magistrate's order dismissing Britanie Bell's motion for nonsummary contempt. For the reasons that follow, we affirm.

**I.**

**FACTS AND PROCEDURE**

Eagy and Bell, an unmarried couple, are the parents of four children. In 2011, Bell filed a complaint to establish custody, visitation, and child support for the children. Subsequently, a magistrate entered a stipulated decree establishing custody, visitation, and child support. In particular, the decree required Bell and Eagy to each pay 50 percent of work-related child care expenses directly to the child care provider. The decree further provided a process for either parent to follow with regard to health care expenses and the amount owed by each party.

1

In 2013, Bell filed a motion and affidavit to initiate a nonsummary contempt proceeding. Bell's affidavit alleged that Eagy had not paid certain work-related child care expenses and averred that Eagy had not paid certain health care expenses. Bell's motion asked the court to impose civil contempt sanctions, impose criminal contempt sanctions, enter a judgment in favor of Bell, and award costs and attorney fees.[1] Eagy filed a "motion for summary judgment" and included a memorandum and affidavits in support of the motion. Specifically, Eagy argued that Bell's affidavit was insufficient to confer jurisdiction upon the court, and thus he should be granted summary judgment. Bell then filed a memorandum in opposition to the motion for summary judgment, another affidavit from herself, an affidavit from the child care provider, an amended affidavit from the child care provider, and an affidavit from her attorney.

Following a hearing, the magistrate entered an order granting Eagy's motion for summary judgment and dismissing Bell's motion for nonsummary contempt. Bell appealed to the district court, raising three issues before the court; Eagy again asserted in his briefing that the affidavit was insufficient. After a hearing, the district court affirmed in part and reversed in part the magistrate's order. Eagy appeals.

## II.

## STANDARD OF REVIEW

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate division, this Court's standard of review is the same as expressed by the Idaho Supreme Court. The Supreme Court reviews the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.2d 214, 217-18 (2013). If those findings are so supported and the conclusions following therefrom, and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.* Thus, we do not review the decision of the magistrate. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, we are procedurally bound to affirm or dismiss the decisions of the district court. *Id.*

---

[1] The difference between civil contempt sanctions and criminal contempt sanctions was discussed in *Camp v. East Fork Ditch Co., Ltd.*, 137 Idaho 850, 863, 55 P.3d 304, 317 (2002). The Court in *Camp* also discussed the rights that attach in nonsummary criminal contempt proceedings. *Id.* at 860-61, 55 P.3d at 314-15.

## III.

### ANALYSIS

On appeal, Eagy argues that the affidavit was insufficient to confer jurisdiction upon the trial court for the contempt allegations. Bell asserts that we should affirm the decision of the district court, agreeing with the district court's reasoning.[2] Bell also requests an award of attorney fees. Before turning to the substance of Eagy's issue, we first address the motion Eagy filed in the magistrate division, which he labeled a motion for summary judgment. We address this because whether the motion was truly a motion for summary judgment guides our review on appeal.

### A.      Proper Treatment of Eagy's Motion

The motion for summary judgment and memorandum in support filed by Eagy concerned Bell's affidavit that initiated the nonsummary contempt proceeding. For nonsummary contempt proceedings, the affidavit that is required to be filed with the court pursuant to Idaho Rule of Civil Procedure 75(c)(2) confers jurisdiction upon the court to consider the contempt allegation. *Jones v. Jones*, 91 Idaho 578, 581, 428 P.2d 497, 500 (1967). The affidavit "must set out all of the essential elements of the contempt." *State v. Palmlund*, 95 Idaho 150, 153, 504 P.2d 1199, 1202 (1972). "Until the [petitioner] can provide a sufficient affidavit, the court does not have jurisdiction to proceed" with the contempt proceeding. *Steiner v. Gilbert*, 144 Idaho 240, 244, 159 P.3d 877, 881 (2007) (citing *Jones*, 91 Idaho at 581, 428 P.2d at 500).

Here, the memorandum filed by Eagy in support of his motion explained that "a review of the affidavit in support of contempt[] shows that [Bell] has failed to allege facts that would be essential to a charge of contempt for violating the stipulated decree." Eagy concluded the memorandum by explaining that "the initiating affidavit is deficient for not alleging facts that would constitute contempt. Without a sufficient affidavit, the court is without jurisdiction to proceed. [Eagy] is entitled, therefore, to have this action dismissed." In short, Eagy filed a motion challenging the jurisdiction of the court based upon the sufficiency of the affidavit, and

---

[2]      Bell also notes that Eagy's brief has not fully complied with Idaho Appellate Rule 35's requirements relating to the issue statement and citation to the record. Nonetheless, Eagy's brief clearly presents the issue for review and supplies necessary argument and authority to address the issue. Although Bell is also correct that Eagy did not request the magistrate hearing transcript be included on appeal, we do not require that transcript to resolve today's appeal.

3

the motion should have been treated by the magistrate and district court as a motion to dismiss for lack of jurisdiction, rather than a motion for summary judgment.[3]

**B.      Sufficiency of the Affidavit**

Eagy argues that the affidavit was insufficient to confer jurisdiction upon the trial court for the contempt allegations relating both to the child care expenses and to the health care expenses. Bell, however, explains in her appellate brief that "the issue of medical expense reimbursement is moot because (1) after the contempt action was filed, Eagy paid the amount owed for medical reimbursement; and (2) the parties have stipulated to a modified decree that changed the language related to reimbursement for medical expenses." Eagy did not file a reply brief, nor otherwise address this statement. We will address the sufficiency of the affidavit as it relates to the health care expenses because Eagy did not respond to the otherwise unverified statement by Bell concerning the payment of the health care expenses, which is also unsupported by evidence in the record, and because the payment of health care expenses does not necessarily moot the issue, specifically as it relates to criminal contempt.[4]

On appeal, this Court exercises free review over the issue of whether the affidavit is sufficient to confer jurisdiction upon the trial court. *E.g.*, *Steiner*, 144 Idaho at 244, 159 P.3d at 881 (exercising free review over the affidavit initiating a nonsummary contempt proceeding). As noted above, the affidavit must allege the essential elements of contempt. *Palmlund*, 95 Idaho at 153, 504 P.2d at 1202. In particular, the affidavit must allege the specific facts that constitute the

[3]      We do not express an opinion on whether the contempt petitioner or respondent may move for summary judgment in nonsummary contempt proceedings seeking civil contempt sanctions. Nor do we express an opinion on whether summary judgment, or an analogous procedural request, is even available in nonsummary contempt proceedings seeking criminal contempt sanctions.

[4]      Contempt includes disregard for or disobedience of an order of the court. *See* Idaho Code § 7-601(5). If Bell's assertion concerning the health care expenses is true, civil contempt is not available because the health care expenses have been paid. *See Camp*, 137 Idaho at 865, 55 P.3d at 319 ("The court could impose a civil contempt sanction only if the contemnor had the present ability to comply with the order violated"). But even if the health care expenses were paid, the payment of the expenses does not change the allegation that Eagy failed to comply with the decree at the time the motion was filed. Hence, criminal contempt is still a possible sanction. *See In re Weick*, 142 Idaho 275, 278-79, 127 P.3d 178, 181-82 (2005); *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947) ("Violations of an order are punishable as criminal contempt even though . . . the basic action has become moot.").

4

alleged contempt. I.R.C.P. 75(c)(3). This is because the affidavit serves as the complaint, which functions to "apprise the alleged contemnor of the particular facts of which he is accused, so that he may meet such accusations at the hearing." *In re Contempt of Reeves*, 112 Idaho 574, 581, 733 P.2d 795, 802 (Ct. App. 1987). In addition, an affidavit that alleges that the respondent failed to comply with a court order must allege that either the respondent or respondent's attorney was served with a copy of the order or had actual knowledge of the order. I.R.C.P. 75(c)(3).

Because this case involves a family law decree, we note that the rules of construction of contracts apply to our interpretation of the decree. *See Toyama v. Toyama*, 129 Idaho 142, 144, 922 P.2d 1068, 1070 (1996). If the language of the decree is clear and unambiguous, determination of its meaning and legal effect is a question of law upon which this Court exercises free review. *Id.* If, on the other hand, the language of the decree is reasonably susceptible to conflicting interpretations, it is considered ambiguous, and the determination of its meaning is a question of fact. *Id.* Therefore, if the language of the decree is ambiguous, the magistrate's interpretation of the decree will be upheld if it is supported by substantial and competent evidence.[5] *Id.*

### 1. Child care expenses

From the record we have on appeal, it appears that the magistrate dismissed Bell's motion for nonsummary contempt, reasoning that Bell had not complied with a procedure involving the selection and billing of the child care provider, which the magistrate read into the decree. The district court, however, concluded that under the unambiguous terms of the decree, "[Bell] appropriately sought to have [Eagy] *reimburse* her for his portion of the child care

---

[5] Eagy spends a portion of his briefing asserting that this Court must give deference to the magistrate's interpretation of the decree, citing *Grecian v. Grecian*, 140 Idaho 601, 97 P.3d 468 (Ct. App. 2004). In *Grecian*, this Court cited to *Toyama v. Toyama*, 129 Idaho 142, 922 P.2d 1068 (1996), for the standard of review. After discussing the applicable standards of review for unambiguous language and ambiguous language in a decree, this Court stated, "A magistrate's interpretation of a divorce decree will be upheld on review if it is supported by substantial and competent evidence." *Grecian*, 140 Idaho at 603, 97 P.3d at 470. The last statement in *Grecian* only applies when the language of the decree is ambiguous, but where the language of the decree is *unambiguous*, we exercise free review. *Toyama*, 129 Idaho at 144, 922 P.2d at 1070.

expenses by seeking contempt relief."[6]  (Emphasis added.)  Here, the decree specifies that any work-related child care expenses incurred for the benefit of the minor children of Bell and Eagy shall be divided between them in proportion to their income, with Bell paying 50 percent and Eagy paying 50 percent.  The decree further requires that Bell and Eagy must each "make direct payment to the childcare provider."

In her affidavit that initiated the contempt proceeding, Bell referenced the decree and referenced the fact that the decree required Eagy to pay 50 percent of any work-related child care expenses.  In addition, Bell stated that Eagy was "in violation of the Order for failing and refusing to pay the monthly child care expenses for the following months:  [list of months and accompanying dollar amounts attributed to '[Eagy's] portion']."  Bell also stated that Eagy "has full knowledge of the provisions of the Orders of the court regarding his obligations to pay monthly daycare costs . . . for the minor children."

Initially, we note that Bell's statement in the affidavit that Eagy has full knowledge of the provisions of the decree satisfies the actual knowledge requirement.  *See Steiner*, 144 Idaho at 244, 159 P.3d at 851 (explaining that an affidavit satisfied the actual knowledge requirement when the affidavit averred that Steiner, to the best of the affiant's knowledge, received a copy of the judgment and was "aware of the contents" the judgment).  As for the facts constituting contempt, the affidavit references and restates the decree's requirement that Eagy pay 50 percent of work-related child care expenses; the affidavit further alleges that Eagy has failed and refused to pay monthly child care expenses; and the affidavit asserts an amount for each month listed that Eagy has not paid.  These facts are sufficient to allege that the decree was violated and apprise Eagy of the particular facts of which he is accused, so that Eagy may meet such accusations at the hearing.  *See Reeves*, 112 Idaho at 581, 733 P.2d at 802 (explaining that the affidavit's function "is to apprise the alleged contemnor of the particular facts of which he is accused, so

---

[6]  The district court's use of the word "reimburse" was likely a mistake.  As the district court later articulated in its decision, Bell may *not* have a money judgment entered in her favor to reimburse her for the damages she has suffered by paying the entire bill.  *See Camp*, 137 Idaho at 865 n.9, 55 P.3d at 319 n.9 ("Idaho law does not permit, however, awarding damages to the complainant as a sanction for contempt.").  We further note that any civil contempt can only seek for Eagy to comply with the decree (and thus pay the daycare provider, as is ordered in the decree).  *See* Idaho Rule of Civil Procedure 75(a)(6) (explaining that for a civil sanction, "[t]he contemnor can avoid the sanction entirely or have it cease by doing what the contemnor had previously been ordered by the court to do").

that he may meet such accusations at the hearing"); *see also Inland Group of Cos., Inc. v. Obendorff*, 131 Idaho 473, 475, 959 P.2d 454, 456 (1998) (holding Obendorff's affidavit sufficient when the affidavit alleged that Obendorff billed Inland and that Inland had not paid for his services as a special master, when the court order appointing Obendorff as special master directed that each party pay half of Obendorff's cost). Therefore, Bell's affidavit is sufficient to confer jurisdiction upon the trial court to consider Bell's allegation of contempt relating to the work-related child care expenses.

### 2. Health care expenses

As for the contempt relating to the health care expenses, it appears from the record that the magistrate determined that Bell had not alleged that she followed the detailed procedure required by the decree, a prerequisite to Eagy paying the health care expenses. The district court affirmed, explaining that Bell's affidavit did not "adequately assert that she specifically followed this detailed procedure, which she agreed to follow."

The decree requires that Bell pay 50 percent and Eagy pay 50 percent of any noncovered health care expenses, including health insurance premiums, incurred for the benefit of the minor children. In addition, for any health care expense that would result in an out-of-pocket expense of more than $500 "to the parent who did not incur or consent to the expense, [the health care expense] must be approved in advance, in writing, by both parties or by prior court order." The decree further provides a detailed, step-by-step procedure for the parties to follow.

As a prerequisite to the step-by-step procedure, for a party who intends to "incur health care expenses for the benefit of the minor children which are not emergency expenses, or for the treatment of any injury or illness," the decree requires that the party "notify the other party prior to incurring any health care expenses for which both parties could become liable" under the decree. The decree then provides (1) that the party incurring the expense notify the other as soon as possible; (2) that the party incurring the expense provide the other party with a copy of any health care bill relating to the incurred expense immediately upon the receipt of such bill; (3) that the bill be submitted without delay to any insurance plan for processing, for the party providing the insurance coverage; (4) that the party who submitted the bill to the insurer immediately provide the other party a copy of any correspondence from the insurer, setting forth the action taken by the insurer in processing the claim; and (5) that within fifteen days of the last step, "[e]ach party shall . . . either pay in full directly to the health care provider any unpaid

expenses . . . or . . . make satisfactory arrangements with the health care provider for payment of the percentage allocated to such party."

Although Bell's affidavit explains that Eagy and Bell each had to pay 50 percent of any noncovered health care expenses for the children, the affidavit only states that "[Eagy] is in violation of the Order for failing and refusing to pay the health care expenses for the minor children for the following: [list of physicians, months, and Eagy's portion of the expense]." The affidavit does not state that Bell notified Eagy prior to seeking treatment, nor does the affidavit aver that Bell followed the steps in the decree. More importantly, the affidavit does not state that Eagy failed to pay the health care provider or make other satisfactory arrangements within fifteen days of Bell providing Eagy with a copy of any correspondence from the insurer, setting forth the action taken by the insurer in processing the claim (the final step in the detailed procedure). Therefore, Bell's affidavit is insufficient to allege that the decree was violated and to apprise Eagy of the particular facts of which he is accused, so that Eagy may meet such accusations at the hearing. *See Reeves*, 112 Idaho at 581, 733 P.2d at 802 (explaining that the affidavit's function "is to apprise the alleged contemnor of the particular facts of which he is accused, so that he may meet such accusations at the hearing"). Hence, the trial court lacked jurisdiction to consider the alleged contempt relating to the health care expenses.

## C.    Attorney Fees

Bell argues that she should be awarded attorney fees and costs. Specifically, Bell contends that she is entitled to attorney fees under the stipulated decree, Idaho Appellate Rule 41, I.R.C.P. 54(e) and 75(m), and I.C. §§ 7-610 and 12-121.

Initially, we note that I.R.C.P. 54(e) and 75(m) do not provide a basis for attorney fees on appeal. *State Dep't of Health & Welfare v. Slane*, 155 Idaho 274, 279, 311 P.3d 286, 291 (2013) (explaining that these rules apply in the district courts and the magistrate divisions of the district courts). In addition, the stipulated decree does not provide authority for this Court to award attorney fees in an appeal from a contempt proceeding; although, the stipulated decree may provide a basis for the prevailing party in a private civil action initiated by Bell to recover the damages she has suffered due to Eagy's failure to pay the child care expenses. This Court's authority to award attorney fees on appeal in a contempt proceeding derives from I.C. § 7-610

8

and, possibly, I.C. § 12-121,[7] as applied through I.A.R. 41. *See Carr v. Pridgen*, 157 Idaho 238, 245, 335 P.3d 578, 585 (2014); *Slane*, 155 Idaho at 279, 311 P.3d at 291.

Considering I.C. §§ 7-610 and 12-121, Eagy's appeal presents a nonfrivolous issue involving a question of law. Therefore, attorney fees are not merited. Bell, however, is entitled to costs on appeal, as the prevailing party. I.A.R. 40.

## IV.

## CONCLUSION

The magistrate and district court should have treated Eagy's "motion for summary judgment" as a motion to dismiss for lack of jurisdiction. Here, Bell's affidavit was sufficient to confer jurisdiction upon the trial court to consider the contempt allegation relating to the child care expenses, but the affidavit was insufficient as to the health care expenses. Accordingly, we affirm the district court's decision affirming in part and reversing in part the magistrate's order dismissing Bell's motion for nonsummary contempt. Costs, but not attorney fees, on appeal are awarded to Bell.

Chief Judge MELANSON and Judge GRATTON, **CONCUR**.

---

[7]    The Idaho Supreme Court has explained that where a specific statute exists for awarding attorney fees, the "specific statute will control over the more general statute." *First Fed. Sav. Bank of Twin Falls v. Riedesel Eng'g*, 154 Idaho 626, 632, 301 P.3d 632, 638 (2012) ("[B]ecause section 45-513 is a specific statute providing for the award of attorney fees in proceedings to foreclose a mechanic's lien, Idaho Code sections 12-120(3) and 12-121, which are general statutes, do not apply."). The Idaho Supreme Court applied this rationale when considering I.C. §§ 7-610 and 12-120(3) in *Bald, Fat & Ugly, LLC v. Keane*, 154 Idaho 807, 812, 303 P.3d 166, 171 (2013), in which the Court held that I.C. 7-610 was a specific statute and held that the general statute, I.C. § 12-120(3), did not apply. Considering the fact that the Idaho Supreme Court has already declared I.C. § 7-610 a specific statute, *Keane*, 154 Idaho at 812, 303 P.3d at 171, and declared I.C. § 12-121 a general statute, *Riedesel Eng'g*, 154 Idaho at 632, 301 P.3d at 639, section 12-121 should not apply on appeal.